VILLAGE OF CHAGRIN FALLS, APPELLEE, *v.* LOVEMAN, APPELLANT.

(No. 51134—Decided December 1, 1986.)

*Joseph W. Diemert, Jr.,* and *Thomas M. Hanculak,* for appellee.

*Harvey Starkoff* and *Gordon S. Friedman,* for appellant.

PATTON, J. Francine K. Loveman appeals the judgment entered by the Bedford Municipal Court granting the village of Chagrin Falls' application for forfeiture of $49,525 and denying her counterclaim for this money. The facts giving rise to this appeal as provided in the record are as follows:

The instant case arises out of a search conducted of Loveman's home. This search produced, *inter alia,* $100,000 in cash.

On September 13, 1984, William Mason, a convicted burglar, was arrested by members of the Federal Bureau of Investigation and by Detective Frank Sanborn of the Chagrin Falls Police Department. Mason's arrest was for unlawful flight to avoid prosecution. Mason had failed to appear for a Broward County, Florida trial on charges of burglary, possession of burglary tools, grand theft, and possession of a firearm by a convicted felon.

The record indicates that Mason lived with appellant at 110 Mill Creek Road in Moreland Hills, Ohio, in a home leased by the appellant. Also living in the home were appellant's daughter and two of Mason's adult children.

Subsequent to the arrest of Mason, the Mill Creek home was searched, pursuant to a search warrant, on September 15, 1984. During the search of appellant's leased residence, approximately $100,000 in cash was found secreted in several areas of the home which was confiscated by the Chagrin Falls Police Department. Other items were taken from the home, including the personal property of appellant. On November 15, 1984, appellant filed a motion to return all her personal property and belongings seized during the execution of the search warrant.

As a result of the seizure and investigation of Mason, appellant was indicted on several counts, including obstruction of justice and receiving stolen property. Appellant ultimately pled guilty to these two counts.

On June 14, 1985, the village of Chagrin Falls (hereinafter "village") filed an application to dispose of unclaimed/forfeited property in custody of law enforcement officials. This property included cash in the amount of $49,525, which is at issue in the instant case.[1] Appellant filed her answer and counterclaim on July 26, 1985. In her counterclaim, appellant alleged that the $49,525 was lawfully possessed by her and that she was lawfully entitled to this money. Appellant sought its return.

On August 13, 1985, a hearing was held on the village's application. Subsequent to the trial, both parties filed post-hearing briefs.

In her brief, appellant attached the state of Ohio's response to her request for discovery in the case of *State* v. *Francine Loveman,* Crim. case No. 194094. Dated November 1, 1984, the response indicated that appellant had made the following oral statement on September 15, 1984 while the search warrant was executed:

"I couldn't take or think of everything, I had to take my chances. These people [police and others] are big time, when in fact he [Mason] was just small time."

On October 4, 1985, the court sent its findings of fact and conclusions to the respective attorneys. Appellant filed her notice of appeal on October 23, 1985 from the judgment entered October 4, 1985.[2] On October 25, 1985, the court filed its journal entry of judgment. In it, the court stated that it had notified the parties on October 4, 1985 of its intention to rule in favor of the village to forfeit the cash in question and deny the counterclaim of the appellant by way of findings of fact and conclusions of law. The court incorporated these findings and conclusions into its October 25, 1985 journal entry and made them a part of the record.

On March 7, 1986, the village and the appellant filed an agreed statement of the record with this court. From this statement and the court's findings of fact, the following is adduced.

Lester R. LaGatta, Chief of Police for the village of Chagrin Falls, testified that cash was found in four

---

[1] The record indicates that the Internal Revenue Service executed against a little more than a half of the $100,000 to secure an unpaid tax liability of the appellant.

[2] The record indicates that the court sent its findings of fact and conclusions to the parties on October 4, 1985 and did not enter judgment until October 25, 1985. In a civil action (which a forfeiture action is considered), if an appellant files a notice of appeal prior to the entry of judgment, the notice is treated as filed after such entry and on the day thereof. App. R. 4(A).

separate places in the Mill Creek Road residence of appellant. Because the money was "hidden," LaGatta stated that he thought it was contraband. LaGatta further testified on direct examination that he asked appellant if it was her money and she replied, "I don't know anything about the money, it's not mine." LaGatta commented that he overheard appellant tell her attorney, "Well, I couldn't get it all out."

On cross-examination, LaGatta admitted that "[i]t was not unusual for citizens who have large sums of cash in their homes, to hide it throughout the house instead of keeping it in one particular place."

Initially, LaGatta testified that there was no claim for the cash seized, but then, on cross-examination, he admitted that a written motion for return of property seized had been filed by appellant's lawyers and that one of appellant's counsel had made an oral inquiry as well as to when the money and other property would be returned.

LaGatta admitted on cross-examination that during the course of appellant's criminal prosecution, the prosecutor's return of discovery failed to reveal the statement that he attributed to the appellant disclaiming ownership of the money.

Patrolman Sean Spohn of the Chagrin Falls Police Department testified that he found $10,000 in a gift box in the basement. Spohn stated that when he found the cash, the appellant responded, "I don't know anything about the money, it's not mine."

The village then called Arthur Krinsky, an agent with the Federal Bureau of Investigation. Krinsky testified that he overheard appellant say, "I don't know anything about the money, it's not mine." During the cross-examination, Krinsky admitted that he was personally asked for the return of the money and other property.

The village's next witness was Detective Frank Sanborn of the Chagrin Falls Police Department. He testified that several items seized from 110 Mill Creek Road were identified as stolen property and that the property positively identified as appellant's was returned to her. The record also indicates that Frank Sanborn prepared the affidavit for the search warrant.

The court found by the preponderance of the evidence presented at the hearing:

"* * * That upon being confronted with the approximate $100,000.00, the defendant denied ownership of the money and also denied knowing anything about it. That the defendant made these denials on three different occasions to three different law officers;

"That the Search was conducted pursuant to an extensive investigation into the criminal activities of one William M. Mason who was also living at the defendant's residence and who also was a co-defendant of this defendant in a matter before the Common Pleas Court of this County;

"That the purpose for the search and the manner in which the subject cash was secreted throughout the residence of the defendant, together with the defendant's denial of both the ownership of or any knowledge of the cash found therein, gives rise to a strong inference that the cash was the proceeds of Mr. Mason's criminal activities and, as such, contraband;

"That the defendant herein was not the owner of the cash in question, nor was she ever in possession of the cash, either actually or constructively. * * *"

In addition, the court stated that the Internal Revenue Service executed against a little more than half of the $100,000 to secure an unpaid tax liability of the appellant. The remain-

ing amount is the subject of this forfeiture action.

The court also found that upon the totality of the circumstances, the cash is not owned by the appellant and is not her property by her own admissions. Thereupon, the court ruled in favor of the village and allowed the money to be placed in the village's general fund for its use.

Appellant raised the following assignments of error before this court:

"I. The appellee failed to give appellant notice required by Ohio Revised Code 2933.41(B) requiring the trial court's order to be vacated.

"II. The appellee failed to prove by a preponderance of the evidence that the cash seized from appellant's home was property that has been lost, abandoned, stolen, or lawfully seized or otherwise forfeited pursuant to Ohio Revised Code Section 2933.41.

"A. The appellee failed to prove that the cash seized was property that had been lost or abandoned.

"B. The appellee failed to prove that the property was lawfully seized.

"C. The appellee failed to prove that the cash seized was stolen property, contraband or otherwise forfeited."

I

In her second assignment of error, appellant contends that the village did not prove by a preponderance of the evidence that the cash seized from appellant's home was lost, abandoned, stolen, lawfully seized, or otherwise forfeited.[3] This contention does not have merit.

The village's forfeiture complaint was based on R.C. 2933.41 which allows a government unit which is in possession of certain forms of previously seized property to bring an action to determine the rights of other persons in such property. R.C. 2933.41, in relevant part, stated:

"(A) Property that has been *lost abandoned, stolen, seized pursuant to a search warrant, or lawfully seized or otherwise forfeited,* and that is in the custody of a law enforcement agency, shall be safely kept pending the time it is no longer needed as evidence, and shall be disposed of pursuant to this section.

"* * *

"(C) A person loses any right he may have to possession of property if either of the following apply:

"(1) The property was the subject, or was used in a conspiracy or attempt to commit, or in the commission, of an offense other than a traffic offense, and such person is a conspirator, accomplice, or offender with respect to the offense;

"(2) When a court determines that the property should be forfeited because, in light of the nature of the property or the circumstances of such person, it is unlawful for him to acquire or possess the property.

"(D) *Unclaimed* or *forfeited* property in the custody of a law enforcement agency, shall be disposed of on application to and order of any court of record that has territorial jurisdiction over the political subdivision in which the law enforcement agency has juris-

---

[3] Appellant had further argued that the village has failed to meet the two-tier standard set out in R.C. 2933.41(C) and the two-part test as outlined in *State* v. *Lilliock* (1982), 70 Ohio St. 2d 23, 24 O.O. 3d 64, 434 N.E. 2d 723. At the time of the hearing, R.C. 2933.41(C) was amended to require only one condition to be met to be suc-

cessful in a forfeiture action. This amendment was effective April 4, 1985; the hearing was held on August 13, 1985. The two-part test in *Lilliock* is no longer required to be met as a result of the amendment. Accordingly, this argument of appellant is moot.

diction to engage in law enforcement activities * * *.'' (Emphasis added.)

In light of the foregoing, the property must be lost, abandoned, stolen, seized pursuant to a search warrant, or lawfully seized or forfeited to trigger disposition pursuant to R.C. 2933.41 (D). Moreover, since R.C. 2933.41 is a forfeiture statute, it must be strictly construed against the state. See *Lilliock, supra.*

In the instant case, the court did not find that the cash at issue was lost or abandoned. Accordingly, we need not determine whether the village proved that the cash was lost or abandoned. In addition, the court did not make an express finding that the property was lawfully seized. The court only stated that the money was found during the execution of the search warrant. Appellant has not contended that the village failed to prove that the property was seized pursuant to a search warrant. Thus, we need not address whether the village met its burden of proof in this regard.

The court did find that there was a strong inference that the cash came from Mason's criminal activities and, as such, was contraband,[4] and that the appellant was not the owner, nor in possession of the cash. The court accordingly ordered the money to be forfeited. Thus, we will confine our discussion to appellant's argument that the appellee failed to prove that the cash was stolen, contraband or otherwise forfeited.

The Ohio Supreme Court in *Lilliock, supra,* held that the proceedings under a property disposition statute are criminal in nature but civil in form. Therefore, the village must prove its case by a preponderance of the evidence.

---

[4] This finding by the court could be interpreted to mean that the money was stolen.

The circumstances of the instant case do give rise to a strong inference, as the court found, that the money was the proceeds of Mason's criminal activities. Mason was wanted for a burglary in Florida, and he was indicted by the Cuyahoga County Grand Jury for receiving stolen property and subsequently pled guilty thereto. In addition, with the money being secreted in such a fashion as to be hidden, the court could infer that the property was stolen by Mason and was, as such, contraband.

The village argues that the money was properly forfeited under R.C. 2933.41(C)(2). A prerequisite to reaching R.C. 2933.41(C)(2) is a determination of whether R.C. 2933.41(C) is met; *i.e.,* whether a person may have a right to possession of the property so that he loses this right if R.C. 2933.41(C)(1) or (C)(2) applies. According to Black's Law Dictionary (5 Ed. 1979), at 1047, "possession" is defined as follows:

"The detention and control, or the manual or ideal custody, of anything which may be the subject of property, for one's use and enjoyment, either as owner or as the proprietor of a qualified right in it, and either held personally or by another who exercises it in one's place and name. * * *"

Applying this definition to the facts of the instant case, we cannot say that the appellant was entitled to possession of this money in view of her disclaimer of ownership. With that disclaimer in the record heard by three different law enforcement officials, and with the fact that the money was secreted, we cannot state that appellant had control of the money for her use and enjoyment. Cf. *State* v. *Davidson* (Jan. 11, 1985), Wood App. No. WD-84-58, unreported. The court did not err in finding that appellant did not have possession, either actual or constructive, of the money.

Assuming *arguendo* that appellant may have had a right to possession

(especially in view of the Internal Revenue Service's claim over one-half of the money for the appellant's tax liability), such right is lost when the provisions of R.C. 2933.41(C)(2) are satisfied.

Applying R.C. 2933.41(C)(2), we agree with the appellant that money is not by its very nature unlawful to possess. *State* v. *Penrod* (Dec. 19, 1984), Scioto App. No. 1448, unreported; *Ryals* v. *Collins* (1975), 46 Ohio Misc. 25, 27, 75 O.O. 2d 91, 92, 345 N.E. 2d 658, 659. Turning then to the "circumstances of the person" provision of R.C. 2933.41(C)(2), all the circumstances must be considered. *Ryals, supra.* "It is the circumstances of the person that converts an otherwise lawful possession into one that costs the penalty of forfeiture upon either its acquisition or possession." *Dayton* v. *Boddie* (1984), 19 Ohio App. 3d 210, 211, 19 OBR 354, 356, 484 N.E. 2d 171, 173. Personal circumstances have been interpreted to include a person under a firearm restriction (*Dayton*), a person under some sort of legal disability (*State* v. *Abboud* [Aug. 1, 1985], Cuyahoga App. No. 49285, unreported), or a person unfit to possess the money (*Ryals, supra*). Appellant does not fall into any of these categories by the proof presented by the village. Notwithstanding this conclusion (that was for argumentative purposes only), the village met its burden. It showed that the property was stolen and also showed that the cash did not belong to, nor was in the possession of, the appellant. Thus the requirements of the forfeiture statute were shown by appellee-village, entitling it to forfeiture of cash.

Accordingly, appellant's second assignment is not well-taken.

## II

On June 14, 1985, the village filed an application to dispose of unclaimed/forfeited property pursuant to R.C. 2933.41. Appellant contends that the village failed to follow the dictates of R.C. 2933.41(B), which she argues is a condition precedent to filing such an application.

R.C. 2933.41(B) provided:

"The law enforcement agency shall make a reasonable effort to locate the persons entitled to possession of property in its custody, to notify them when and where it may be claimed, and to return the property to them. In the absence of evidence identifying persons entitled to custody, it is sufficient notice to advertise in a newspaper of general circulation in the county, briefly describing the nature of the property in custody, and inviting persons to view and establish their right to it."

Appellant claims that the village never notified her that she could claim the $49,525 through the village of Chagrin Falls, nor did it advertise its possession of the money.

The village argues that it had no duty to inform the appellant that she could claim the money in light of her disclaimer of ownership of the money. According to the village, appellant was not entitled to possession of the property and, thus, there was no mandate upon the village to notify the appellant.

We note no error with respect to this assignment which would cause appellant harm. As we discussed under her second assignment of error, appellant did not possess the money and did not own the money. Cf. *State* v. *Roe* (Sept. 3, 1985), Pike App. No. 384, unreported.

In addition, the record indicates that the appellant had notice. She was present at the time the property was confiscated, and she was aware that her personal property had been seized and sought its return. Appellant made demands for its return by a written motion and by oral inquiries to various law enforcement officials, which included the village's Chief of Police, Lester LaGatta.

The testimony of Frank Sanborn, a Chagrin Falls detective, reveals that the items in the possession of the Chagrin Falls Police Department which were identified as appellant's were returned to her. Items not so identified and items claimed to be stolen were not given to appellant.

Thus, the record indicates that appellant had notice that the property was seized even though appellant did not own or possess the property. She made a claim for her personal property, and the village's police department attempted to return what was hers. We find appellant suffered no prejudice as a result of any possible R.C. 2933.41(B) error.

Appellant's first assignment is not well-taken. The judgment of the trial court is affirmed.

*Judgment affirmed.*

KRUPANSKY and CORRIGAN, JJ., concur.