## State v. Iacovone
*[Cite as 5 AOA 178]*

Case No. 57204
*Cuyahoga County, (8th)*
*Decided August 23, 1990*

*John T. Corrigan, Cuyahoga County Prosecutor, for Plaintiff-Appellee.*

*John F. Corrigan, Assistant Prosecuting Attorney, The Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113, for Plaintiff-Appellee.*

*David L. Doughten, 1040 Standard Building, 1370 Ontario Street, Cleveland, Ohio 44113, for Defendant-Appellant.*

McMANAMON, J.

In the early morning hours of May 28, 1988, Bedford police confiscated a van driven by Orsino Iacovone near a construction site. The officers refused to drive Iacovone to a phone, but promised that when and if he could prove legal possession of the van and its contents, they would return everything.

Subsequent investigation by police disclosed a possible burglary at the construction site. In charges stewing from these incidents, Iacovone was convicted of breaking and entering (R.C. 2911.13) and theft (R.C. 2913.02).

In a timely appeal, he challenges the denial of his motion to suppress and the sufficiency of the evidence. A review of the record compels reversal.

In his first assignment of error, Iacovone urges the validity of his motion to suppress the physical evidence.

The state presented a Bedford police officer as its sole witness at the suppression hearing. The officer told the court that at approximately 2:20 a.m. on May 28, 1988, a Maple Heights police officer pulled up to the Bedford officer's squad car as he sat in a parking lot on Rockside Road. The Maple Heights officer informed the witness he had spotted a silver and red van traveling west on Rockside Road. As the van neared the construction site of the Cardinal Federal Retirement Village at 19455 Rockside Road in Bedford ("the site"), the Maple Heights officer observed it slow and appear to stop and attempt a left turn into the site before straightening its wheels and continuing westward.

As the officers spoke, the same van passed them eastbound on Rockside Road. The Bedford officer immediately pursued the vehicle and stopped it a half mile away.

A police officer may conduct an investigative stop and protective search of a motor vehicle if he has a "reasonable suspicion" of criminal activity taking place. *Smith v. Ohio* (1990), 110 S. Ct. 1288; *State v. Bobo* (1988), 37 Ohio St. 3d 177. The officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio* (1968), 392 U.S. 1, 21. The circumstances necessitating the stop must be viewed as a whole. *State v. Freeman* (1980), 64 Ohio St. 2d 291. A court must determine that the facts available to the officer at the time of the stop were sufficient for a reasonable person to believe that the officer's actions were appropriate. *Terry, supra,* at 21-22.

It is well settled that where an officer sees suspicious activity in a "high crime" area, he may briefly stop the suspicious individual in order to determine his identity or to momentarily maintain the *status quo* while obtaining more information. *Bobo, supra; Freeman, supra.* Two panelists agree that the. Bedford officer's stop in this case was based upon a reasonable suspicion (See dissenting opinion at page 2). For that reason, we must hold that Iacovone's objections in this regard are without merit.

This writer, however, notes that there was no evidence that the stop occurred in a "high crime" area. Further, the officer acknowledged he was aware of no theft reports from the construction site at the time he stopped Iacovone. "A mere suspicion, with no trace of evidence that the

suspects committed a crime, or were going to commit one, is insufficient to justify a stop." *State v. Vajda* (Mar. 29, 1990), Cuyahoga App. Nos. 57854, 57898, 57899, 57974, unreported; *State v. Stamey* (June 16, 1976), Summit App. No. C.A. 8027, unreported. Unarticulate hunches cannot provide the requisite "reasonable suspicion." *State v. Barrow* (1978), 60 Ohio App. 2d 335 (police observance of a parked car driven at a normal rate of speed from an area with a high incidence of auto theft did not reasonably warrant an investigative stop).

This writer would hold that the motorist's movement as described by the officer, by itself, does not provide such "specific and articulable facts" as to warrant an investigative stop. "To rule otherwise would establish the dangerous precedent that a person's mere presence [even in] an area of high crime activity suspends the protection of the Fourth and Fourteenth Amendments to the U. S. Constitution." *State v. Izzo* (Feb. 15, 1990), Cuyahoga App. No. 57982, unreported; *State v. Rucker* (Dec. 21, 1989), Cuyahoga App. No. 57728, unreported (police observance of pedestrian placing "something in his pocket does not reasonably warrant an investigative stop); *State v. Chandler* (Nov. 22, 1989), Cuyahoga App. No. 57731, unreported ("rustling" while in a car parked in a high crime area is insufficient to warrant an investigative stop). A majority of this panel, however, finds the stop to be reasonable under these circumstances and consequently the trial court decision as to the stop will be affirmed.

As the Bedford officer approached the stopped van, he peered into the rear window and observed a Honda 3000 portable generator and a roll of copper tubing. The officer obtained Iacovone's license and responded to his inquiries by explaining that he stopped the van because it was "'seen in the area of the Cardinal Federal Retirement Village back there. I'm curious as to what you were doing there." Iacovone told the officer he was visiting a girlfriend who lived in the Valleyfield apartment complex adjacent to the construction site.

Police questioned Iacovone further upon discovering that the van was registered to a Wadsworth resident. Iacovone explained the van belonged to the father of the woman he lived with in Parma. He stated that he used the van and plumbing supplies in doing part-time plumbing work for a construction company. The Bedford officer told the court that his suspicions concerning Iacovone were further aroused when,

during a computer check on Iacovone, "somebody mentioned" that he was a "known 'burglar.'"

The officer conceded, however, that the three to five minutes which had elapsed between the two sightings of the van insufficient of time for Iacovone to turn were probably an length around, pull into the construction site, break into the trailer and load the van with the goods. Nevertheless, the police detained and questioned Iacovone for about thirty minutes while back up officers searched the construction site. "Circumstances which justify a temporary detention for a few minutes may not suffice to justify detention for thirty to forty minutes *** *State v. McFarland* (1982), 4 Ohio App. 3d' 158, 160 citing *Sharpe v. United States* (C.A. 4, 1981), 660 F.2d 697. Their efforts revealed an open plumbing supply trailer but no sign of a forced entry.

The police were unable to reach a company representative to determine if anything had been stolen from the site. As a result, they released Iacovone, but confiscated his van, advising him that they believed he had stolen the equipment contained in the vehicle. It was then that police refused to drive Iacovone to a phone but, as we have noted, promised that if he could prove legal possession of the van and its contents, they would return everything.

To make an arrest, a police officer must have probable cause to believe a felony has been committed. Probable cause requires that the officer act only upon sufficient information from a reliable source that would lead a prudent person to believe that the accused committed the felony. *State v. Timson* (1974), 38 Ohio St. 2d 122, paragraph one of the syllabus. Probable cause must exist at the moment of the arrest. *Beck v. Ohio* (1964), 379 U.S. 89, 91.

At the moment police released Iacovone they had no information a felony had been committed and so could not have had probable cause to believe Iacovone had committed one. In this regard, two panelists agree that the police confiscated and impounded Iacovone's van and its contents on the basis of unsupported suspicions. For that reason, we must hold that the court should have suppressed the physical evidence.

R.C. 2933.42 and R.C. 2933.43 permit a law enforcement officer to seize contraband and any vehicle used to transport it. R.C. 2901.01(M), in relevant part, defines contraband as:

"(1) Property that in and of itself is unlawful for a person to acquire or possess;

"(2) Property that is not in and of itself unlawful for a person to acquire or possess, but that has

been determined by a court of this state, in accordance with law, to be contraband because of its use in an unlawful activity or manner, of its nature, or of the circumstances of the person who acquires or possesses it;

"*** ."

The mere possession of plumbing supplies is not unlawful. See *State v. Lilliock* (1982), 70 Ohio St. 2d 23; *Garono v. State* (1988), 37 Ohio St. 3d 171, 176; *State v. Jacobs* (1940), 137 Ohio St. 363, paragraph two of the syllabus; *Chagrin Falls v. Loveman* (1986), 34 Ohio App. 3d 212; *State v. Golston* (May 24, 1990), Cuyahoga App.. No. 56921, unreported; *State v. Martin* (Dec. 21, 1989), Cuyahoga App. No. 57675, unreported. To prove such items are contraband, the state must demonstrate that it is more probable than not, from all the circumstances, that the defendant used the items in the commission of criminal offenses. *Loveman,* supra; Golston, *supra; State v. Brooks* (Feb. 27, 1986), Cuyahoga App. No. 50384, unreported. At the moment police seized the van and its contents, they were without probable cause to believe Iacovone stole the van and its contents and thus, in good faith, could not confiscate the items as contraband.

We note that Crim. R. 41(B) limits warrants for seizure of property to:

"(1) evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) weapons or other things by means of which a crime has been committed or reasonably appears about to be committed."

Clearly, police cannot be permitted a warrantless seizure in circumstances which would not allow a warrant to be issued.

Finally, police claimed to have "impounded" the van. R.C. 4513.61 restricts impounding to unclaimed or abandoned vehicles on public streets. Thus, the police exceeded their statutory authority by taking the van driven by Iacovone.This assignment of error is well taken in part.

Iacovone's second assignment of error alleges the evidence is insufficient to sustain" his' convictions of breaking and entering and theft. For purposes of review and to comply with App. R. 12 we will assume the validity of the search and seizure.

R.C. 2911.13(A) provides:

"No person[,] by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense as defined in section 2913.01 of the Revised Code, or any felony."

R.C. 2913.01 includes in its definition of a theft offense a violation of R.C. 2913.02 which states:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent;

"*** ."

A challenge to the sufficiency of evidence requires that we view the matters adduced in a light most favorable to the prosecution and determine whether a rational fact finder could have found all the material elements of the offense beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St. 2d 261; *State v. Martin* (1983), 20 Ohio App. 3d 172. Such a review looks to the entire record, all the evidence and reasonable inferences, as well as the credibility of witnesses. It is the responsibility of the trier of fact to evaluate witness credibility. *State v. DeHass* (1967), 10 Ohio St. 2d 230. In order to reverse the conviction, the defendant must prove that the circumstantial evidence is not irreconcilable with a reasonable hypothesis of innocence. *State v. Kulig* (1974), 37 Ohio St. 2d 157.

No one saw Iacovone enter or leave the construction site. Although police discovered the open trailer of plumbing supplies, they found no evidence of forcible entry. Weeks later, construction workers uncovered a bolt cutter and padlock under the plumbing trailer. Police were unable to obtain fingerprints from the bolt cutter, padlock or trailer, but noted there were two sets of gloves in the passenger area of the van. The dry and gravel-strewn earth surrounding the trailer disclosed no tire tracks.

To prove Iacovone broke into and entered the trailer, the state relied on photographs of a chevron pattern of drops of an unidentified fluid which were found splattered in the vicinity of the trailer. The state posited that this pattern was similar enough to a puddle of radiator fluid, which formed underneath the impounded van, to indicate that van had parked next to the trailer on the site. Upon our review of the photos, we are unable to detect the purported similarity.

A Grand Jury indicted Iacovone as follows:

"*** unlawfully and purposely and by force, stealth, or deception, trespassed in an unoccupied structure the property of Cardinal Community Retirement Center with the purpose to commit therein any theft offense, as defined in Section 2913.01 of the Revised Code, or a felony."

Even if Iacovone were found to have driven the van into the property, the state did not demonstrate that he " *** by force, stealth, or deception ***" trespassed in the unoccupied trailer.

Trespassing on the construction site is not indicative of breaking and entering an "unoccupied structure" as required by R.C. 2911.13(A), by the trial court's instruction to the jury and as charged in the indictment. A trailer is considered a structure within the meaning of R.C. 2911.13. *State v. Butcher* (Oct. 17, 1985), Cuyahoga App. No. 49643, unreported. A fence enclosed field, however, has been held not to constitute a structure. *State v. Barksdale* (Dec. 31, 1987), Lake App. No. 12-117, unreported. See *State v. Collins* (Feb. 28, 1986), Darke App. Nos. 1148, 1149, unreported.

We hold that a rational fact finder could not find all the elements of R.C. 2911.13(A) beyond a reasonable doubt and Iacovone's conviction of breaking 'and entering must be reversed and vacated.

Construing the evidence most strongly in favor of the prosecution, however, a jury might conclude Iacovone stole the plumbing supplies, though the evidence, at best, is weak.

The state presented evidence that a Honda portable generator, copper fittings and copper tubing were taken from a trailer on the construction site sometime between the afternoon of Thursday, May 26 and the time police encountered Iacovone in front of the site at 2:30 a.m. Saturday, May 28. A police search of the van uncovered a Honda portable generator bearing the same serial number and identification marks as one taken from the construction site, as well as fittings and tubing identical to that kept on the premises. The fittings were found in a compartment below a bench seat in the back of the van. Also stored in the van were three five-gallon buckets identified as those used by plumbers to carry tools on the site. Iacovone presented no evidence.

"[T]he unexplained possession by a defendant of recently stolen property may give rise to a permissive inference from which a jury may conclude, beyond a reasonable doubt, that the accused is guilty of the theft." *State v. McAllister* (1977), 53 Ohio App. 2d 176, 180; *State v. Coker* (1984), 15 Ohio App. 3d 97, 99. Cf. *State v. Arthur* (1975), 42 Ohio St. 2d 67, 69.

This assignment is well taken in part.

We reverse and remand this cause for further proceedings consistent with this opinion.

Judgment reversed and remanded; conviction for breaking and entering, R.C. 2911.13, vacated.

It is ordered that appellant recover of appellee his costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

PEPPLE. J., concurs in judgment only.

STILLMAN J., dissents.

Sitting by Assignment, Judge Saul G. Stillman, retired from the Eighth District Court of Appeals.

Sitting by Assignment, Judge Fredrick D. Pepple, Auglaize County Common Pleas Court.

STILLMAN, J., dissenting.

I find it necessary respectfully to dissent from the opinion of the majority in the instant case.

In the first assignment of error the trial court's action in rejecting the appellant's motion is reversed. I find this inappropriate. Testimony at the suppression hearing indicated that the episode arose from an incident in Bedford, Ohio, at a construction site in the very early morning hours of May 28, 1988.

At 2:20 of that morning, a Maple Heights police officer alerted a Bedford police officer concerning his suspicions involving a van traveling in the vicinity. The Maple Heights officer had observed the van apparently turning into the area where a retirement village was under construction. While the two police officers were conversing, the van which had previously been traveling west passed again, now going east.

The Bedford police officer promptly pursued the van and stopped it a half mile away.

The issue which is posed at this initial step in the sequence of events concerns the validity of the investigatory stop at this point. Here I part company with the writing judge in assessing the propriety of the officer's activity. Viewing the action as an unwarranted intrusion, the writer has concluded that, because the area was not considered a "high crime" area and there were no

reports of thefts from the construction site at the time, the initial stop was improper.

On the contrary, I regard the occurrence as a demonstration of highly perceptive and intelligent police activity designed to discourage a growing acceleration of criminal conduct throughout the community.

Much more than a "mere suspicion" of criminality is evidenced by the strange conduct of the van driver in moving his vehicle from a westbound course to an eastward course at 2:20 A.M. after having approached a construction site where vehicles, building materials and equipment were stored overnight.

It appears manifest to me that a reasonable suspicion that "crime might be a-foot" would appear in the mind of a responsible and competent police officer under these circumstances. Certainly, adequate and sufficient ground existed for a *Terry* stop.

The emphasis upon a "high crime" area cited in the opinion also appears to me to be misplaced. I would focus rather upon the judicial recognition of the increase in criminal activity everywhere in our communities, urban and rural, without singling out particular sites for extra concern. Here the area of high crime is less significant than the "crime time" involved. The strange movements of the van at this very early hour of the morning provided the basis for a "reasonable suspicion" of criminal activity in accord with *State v. Bobo* (1988), 37 Ohio St. 3d 177, reversing this Court of Appeals.

The Ohio Supreme Court declared: "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances."

"*** The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. *** A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. ***" (Citations omitted.) *Adams v. Williams* (1972), 407 u.S. 143, 145-146. The articulable facts warranted the intrusion in this case.

As I view the circumstances, therefore, it appears to me that the stop triggered by' the van's erratic driving, its apparent activity in the vicinity of the construction site, and its presence there at 2:20 A.M., a strange hour, provided sufficient bases for a reasonable suspicion warranting a stop.

I do not imply that all stops are warranted but it appears toe me that the case before us fully merited, indeed required, investigatory action.

All the events which followed from this properly instigated investigatory action by the police, leading to the appellant's arrest and subsequent conviction, appear to me to be accordingly justified.

The van was held because it appeared to contain stolen property, but the appellant was released from custody for lack of immediate proof.

That proof was not immediately available because the construction site which had been burglarized was closed during the night season and until those in charge had an opportunity to discover the theft. Material found in the van was identified as the stolen property as soon as possible.

It is not infrequent in police operations that a time interval is required to check the ownership of suspected contraband. I find no reversible error in the remainder of the assignment of error. The property found in the van was taken from the construction site, additional proof that the appellant had been on the premises.

To reverse the result of the case below, in my judgment, is to commit an unwarranted error. From the record as we have it, the conviction of the appellant is thoroughly logical, justified by the circumstances demonstrated and in accordance with law.