This is an appeal from an order of Judge Janet R. Burnside granting summary judgment to appellee, the City of Berea, (Berea) on appellant James Houpt's claim for the return of $19,000 in cash found during an inventory search of his impounded car. He claims, further, that it was error to deny his motion for summary judgment because Berea had unlawfully impounded and searched his car and that he has the superior right to the money because, even though he denied ownership, it was found in his vehicle. Berea argues that Houpt has no standing to claim that the search of his vehicle was unlawful because he denied ownership of the money, and he is not entitled to possession of lost property simply because it was found in his car. We reverse and enter judgment for Houpt.
From the record we glean the following: Houpt's father died in the Cleveland area in June of 1997 and Houpt drove his 1993 Ford from his home in Tucson, Arizona to the home of his mother and stepfather on Bronson Road in Berea. Anticipating frequent trips to Cuyahoga County during the probate of his father's estate, he left the car and several sets of keys with his mother. During a subsequent visit with his mother, he had stopped at a tavern and was returning to Bronson Road shortly after midnight on April 29, 1998. Berea Police Officer Steven Nowicki claimed to have observed Houpt's vehicle speeding and weaving between the curb and centerline and, after Houpt drove into his mother's driveway and parked, Nowicki approached him for questioning.
Houpt failed field sobriety tests and was arrested for driving while intoxicated pursuant to R.C. 4511.19. The police searched Houpt's person and discovered an undisclosed amount of money, which was turned over, at the scene, to Houpt's stepfather. Berea police then searched Houpt's car in anticipation of its being towed and impounded and found $4,000 in cash in the glove compartment, and a sealed cardboard box in the trunk containing $19,000 in cash. After impoundment another search of the car was conducted and a small amount of marijuana was found in the center console but the record does not show that Houpt was charged with any crime other than driving while intoxicated.
Houpt was questioned about the money and, while he claimed ownership of the $4,000 found in the glove compartment, he denied knowledge or ownership of the $19,000 found in the trunk. Berea claimed that Houpt has denied ownership of the $19,000 on six different occasions; at the scene of his arrest, during questioning after his arrest, in a written statement given to police after his questioning, during questioning when he came to pick up his impounded car, by signing the same statement a second time when he came to pick up his car, and in an affidavit attached to his motion for summary judgment.
Because Houpt denied ownership of the $19,000, Berea did not return the money to him when the rest of his property was returned and on December 2, 1998, Houpt filed a replevin action seeking return of that money. Berea has, however, deposited the money in a bank account, so the judge ruled that replevin no longer was an appropriate remedy, and Houpt proceeded on an amended complaint for damages.
In his motion for summary judgment Houpt claimed that the impoundment and search of his vehicle was an unlawful inventory search because his car was in his mother's driveway at the time and his stepfather was present to take possession of it. He also claimed that he was entitled to the property as a finder because it was lost or mislaid in his car and that Berea had no right to refuse to return it. Houpt further claimed that R.C. 2933.41 was inapplicable, and that he was entitled to the money pursuant to R.C. 737.29 and 737.31.
Berea claimed in its cross motion for summary judgment that it lawfully took possession of the property pursuant to R.C. 2933.41, and that it was required to return the property only to a person who could prove ownership. It contended that because Houpt denied ownership, he was not entitled to return of the money, even though it was found in his car.
On August 13, 1999, the judge granted Berea's motion for summary judgment, finding that although Houpt claimed the search of the vehicle was unlawful, he did not present evidence to dispute the city's claim that the impoundment and inventory procedures all were conducted in accordance with the policy of the Berea police, and that he was not entitled to the money regardless of whether R.C. 737.29 or R.C. 2933.41
applied.
Houpt presents three assignments of error:
 I. THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
 II. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR SUMMARY JUDGMENT.
 III. THE TRIAL COURT ERRED IN FINDING THAT O.R.C. 2933.41, (THE FORFEITURE STATUTE), APPLIES IN THIS CASE.
Because all the assignments can be disposed of by our decision on a single issue, we will address them together. This court reviews the grant of summary judgment de novo, applying the same standard as that applied by the trial judge. Druso v. Bank One of Columbus(1997),124 Ohio App.3d 125, 131, 705 N.E.2d 717, 720. A judge may grant a motion for summary judgment pursuant to Civ.R.56(C) when the following elements are satisfied:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 369 N.E.2d 267, 274; accord Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201.
The dispositive issue in this case is whether an unlawful seizure affects the disposition of the $19,000 taken from Houpt's car. R.C. 2933.41
states, in relevant part:
 (A)(1) Any property * * * that has been lost, abandoned, stolen, seized pursuant to a search warrant, or otherwise lawfully seized or forfeited, and that is in the custody of a law enforcement agency shall be kept safely pending the time it no longer is needed as evidence and shall be disposed of pursuant to this section.
R.C. 2933.41 is a forfeiture provision, and is to be construed strictly against the state, or in this case Berea. Village of Chagrin Falls v. Loveman (1986), 34 Ohio App.3d 212, 216, 517 N.E.2d 1005, 1009. Furthermore, we will interpret the statute to comport with common law rules concerning lost, abandoned, and mislaid property. We will not presume or imply intent to alter common law rules, as any intent to do so must be clearly shown in the language of the statute. Carrel v. Allied Products Corp. (1997), 78 Ohio St.3d 284, 287, 677 N.E.2d 795, 798-99.
Once a law enforcement agency comes into legal possession of property, it is entitled to retain the property until someone establishes that he is entitled to possession. R.C. 2933.41(B). If the government meets its burden of showing a lawful seizure, a claimant has the burden of showing entitlement to possession by the preponderance of the evidence. Loveman, supra; State v. Guarin (Oct. 17, 1991), Cuyahoga App. No. 59202, unreported. In this case Houpt initially challenges the lawfulness of the search and seizure of the money from the trunk of his car.
According to Houpt's affidavit, his car was lawfully parked in his mother's driveway when the police questioned him, arrested him, decided to impound his car, and conducted an inventory search of the car in anticipation of its tow. The judge ruled that this evidence was insufficient to raise an issue of the legality of the search, as Houpt failed to bring into question the police officers' sworn statements that the impoundment and inventory were conducted according to police department policy. On this point the judge erred.
As already noted, once a search is challenged the government bears the burden of proving that its search and seizure of the property was lawful. City of Xenia v. Wallace (1988), 37 Ohio St.3d 216,524 N.E.2d 889. When moving for summary judgment, a party is required to show the absence of factual dispute and entitlement to judgment as a matter of law. Zivich, supra. When faced with a proper motion a party opposing summary judgment must come forward with sufficient evidence on issues on which he will bear the burden of proof at trial. Felker v. Schwenke (1998), 129 Ohio App.3d 427, 430, 717 N.E.2d 1165, 1167. In order to be entitled to summary judgment, Berea was required to present evidence from which a judge could determine that the search was lawful. The same evidence was required in order to oppose Houpt's motion, which claimed the search was unlawful. The affidavits of the police officers, baldly claiming that the search was conducted pursuant to departmental policy, are inadequate to show the legality of the search.
We also question the admissibility of the officers' affidavits for the purpose offered; the officers state the factual conclusion that their search was pursuant to departmental policy but Berea failed to put the content of that policy into evidence. To the extent that the officers' affidavits are intended to prove the content of the policies, they violate the best evidence rule, Evid.R. 1002. To the extent that the statements attempt to show that the officers' actions were within the scope of the policies, the bare conclusions are insufficient because they do not provide evidence of either the policies themselves or the facts that are claimed to be within those policies.
In addition to the failure of Berea's burden of proof on this issue, the evidence that was presented shows that Houpt himself was entitled to judgment as a matter of law. Berea claims that its officers conducted a valid inventory search pursuant to standard procedures but, before any inventory search pursuant to any procedure can be valid, the underlying impoundment of the car itself must be lawful. State v. Collura (1991),72 Ohio App.3d 364, 370-71, 594 N.E.2d 975, 979. Where a car is legally parked and [n]o pressing public concern justifies its removal, the police impoundment is illegal. Id. Houpt's statement that he was parked in his mother's private driveway, and the police officer's admission that Houpt's stepfather was present at the scene and took Houpt's property for safekeeping, are sufficient to create at least an issue of fact concerning whether the impoundment was legal. Moreover, because Berea failed to rebut any of Houpt's sworn statements concerning the impoundment of his car and has admitted the presence of an adult apparently willing, able and authorized to take possession of the money from Houpt's person, we can take these facts as undisputed. On these facts the car's impoundment was unlawful, and, therefore, that Houpt was entitled to summary judgment.
The dissenting opinion notes in passing that it believes Houpt had the burden of proving the search unlawful in a civil case. Even assuming that Houpt had the burden, he plainly satisfied it here. The State did not dispute that the car was in his mother's driveway, or that his stepfather was present to take possession of his property. Under Collura, the impoundment was manifestly unlawful.
Despite the invalidity of the impoundment and search, Berea raises three arguments against Houpt's entitlement to the money. The city first claims that Houpt cannot make an exclusionary rule argument in a civil action for the return of seized property. We disagree. The critical issue here is whether the property is subject to disposal under R.C. 2933.41, which depends on its being lawfully seized in the first instance. Berea should not be heard to argue that it may profit from its unlawful activities, for such an argument renders the government no better than the suspects it pursues.
In our opinion, a strict reading of the statute requires that the police department show it lawfully came into possession of the money before it can apply R.C. 2933.41. Although Loveman, supra, states the property subject to the statute in the disjunctive, the language of the statute has since been amended to state that property that has been lost, abandoned, * * * or otherwise lawfully seized or forfeited is subject to the statute. In Loveman, the statute applied to property that had been lost, abandoned, * * * or lawfully seized or otherwise forfeited. Loveman,34 Ohio App.3d at 215, 517 N.E.2d at 1008 (citing former R.C.2933.41).[1] The changed language reflects logic and the common law, because a party who comes upon property unlawfully is not entitled to its possession, regardless of whether the property is lost and regardless of whether the party is a governmental entity.
A trespasser is not a lawful finder of lost or mislaid property. Niederlehner v. Weatherly (1943), 73 Ohio App. 33, 38-39, 54 N.E.2d 312,315, appeal after remand (1946), 78 Ohio App. 263, 267, 69 N.E.2d 787,790. While a law enforcement agency would be entitled to claim a superior right to lost property as a finder of that property as long as it was found pursuant to a lawful search, it could not be a finder of the property if its search was illegal; the government would be a trespasser and the owner of the property upon which the trespass was committed would be entitled to possession. In this case Berea has misconstrued the import of the Niederlehner cases by failing to recognize that the trespasser here is its police department, not Houpt. Because the common law of lost property and R.C. 2933.41 both require a finder of property to come into possession lawfully, the issue of whether the search of Houpt's car was lawful is not only relevant, but dispositive here.
Although unnecessary to decide this case, we note that another of Houpt's arguments is well-taken. He argues that the evidence showed that the money was mislaid, rather than lost, as it was found inside a taped box secreted in the trunk of his car. We agree that, if the distinction became necessary, the money fits the definition of mislaid property rather than lost property. Ray v. Flower Hosp. (1981), 1 Ohio App.3d 127,128-29, 439 N.E.2d 942, 944. Because the owner of the property on which mislaid property is found is held at law to be the bailee of such property, Houpt argues that he is entitled to possession of the property even if R.C. 2933.41 applies. Id., at 129, 439 N.E.2d at 945; Nosse v. Rose (1933), 45 Ohio App. 54, 55-57, 186 N.E. 622, 622-23.
R.C. 2933.41 evinces no clear intent to uproot the common law of lost and mislaid property, and because removal of these common law rights would raise questions under Section 16, Article I of the Ohio Constitution, Houpt's argument would merit close scrutiny even if the search and seizure had been lawful. Mominee v. Scherbarth (1986),28 Ohio St.3d 270, 291-92, 28 OBR 346, 364-65, 503 N.E.2d 717, 733-34
(Douglas, J., concurring). However, because of our decision that Berea came into possession of the property unlawfully, we find it makes no difference whether the money here was lost or mislaid. Houpt is entitled to possession, and Berea is not.
Berea next claims that even if its search and seizure was unlawful, Houpt has no standing to challenge it because he has disclaimed ownership of the property. Again we disagree, because if the police had not violated his rights by unlawfully searching his car, no denial of ownership would have occurred.
 If the initial intrusion was unlawful, then appellees cannot be deemed to have voluntarily abandoned the property and to have thereby lost their standing to object. * * * [A] loss of standing to challenge a search cannot be brought about by unlawful police conduct. * * * State v. Taub (1988), 47 Ohio App.3d 5, 7, 547 N.E.2d 360, 362 (quoting United States v. Maryland (C.A.5, 1973), 479 F.2d 566, 568).
Houpt's disclaimer cannot be held against him because his car should not have been impounded, the property never found, and he would not have been asked to affirm or deny ownership. To hold otherwise would encourage law enforcement agencies to conduct illegal searches where the subject is suspected of carrying cash or other valuable property, in the hope of extorting a denial of ownership under the threat of criminal charges. Berea cannot cling to the fiction that it can keep the money because it was lost and because Houpt denied ownership. Under the common law Houpt is entitled to possession of lost or mislaid property as against a trespasser who removed it from his car, and R.C. 2933.41 admits of no difference. Houpt, therefore, has standing to assert his rights against improper removal of property from his car. If the Berea police had not intervened, the lost money might still be waiting for Houpt to find it without government intervention. The illegal impoundment and search deprived Houpt of that chance.
Berea's third argument states that the legality of the search is irrelevant because the issue is whether Houpt is entitled to the money, and not whether the city is entitled to it. Our explanation concerning the city's first two arguments should suffice to dispose of this one. The legality of the search is vital to determining Houpt's entitlement to the money. Had Houpt found the money prior to a legal impoundment and search of his vehicle, he would, nonetheless, be entitled to possession of that money as its finder, pursuant to R.C. 2933.41(B). That statute posits a situation in which the government, by virtue of its lawful presence, becomes the finder of lost property itself and therefore is entitled to possession as against all but the rightful owner of the property. This is an application of the common law as stated in the Niederlehner cases, supra. However, in this case the government is a trespasser, and has no claim to the money whatsoever. In that case the next person entitled to possession as against all but the true owner is Houpt, the owner of the property on which the lost money was found. The city has no right to deny Houpt's claim based solely on the fact that the true owner has not appeared to claim the money.
R.C. 2933.41 does not require a true owner, but simply one entitled to possession. The cases Berea cites requiring a party to prove ownership before becoming entitled to possession are bottomed on the fact that the government was the common-law finder of the money and held the property under circumstances under which only the true owner could claim a right greater than that of the government.[2] In this case Houpt is entitled to possession as against the government, a trespasser who came upon the money illegally. R.C. 2933.41 does not change this fundamental rule of the common law.
Because Berea obtained the money through an unlawful seizure, it not only had no right to possess the money, it had no right to divest Houpt of his right to possession and determine its disposition under any statute or common-law rule. Although Houpt urges the application of R.C.737.29 (which itself must be construed as consistent with common law), which mandates that the money shall be delivered to the person from whom taken if no other party claims it within thirty days, we question whether the unlawful seizure in this case would allow even this thirty-day divestiture. Under common-law rules the city would be required to turn the property over to Houpt immediately, and any true owner claim would have to proceed against him. The true owner has no right to have the government safeguard his money from Houpt when it unlawfully took it from him, just as the government has no right to keep the money from Houpt after it trespassed on his property to obtain it. Thus a serious question would arise concerning whether unlawfully seized property fits the definition of recovered property pursuant to R.C. 737.29, although the thirty-day provision might be considered an acceptable period for determining whether the property is contraband.
In any event, Houpt prevails in this case regardless of whether R.C.737.29, R.C. 2933.41, or the common law applies. Under the common law, he is entitled to the money as against its current possessor, the city of Berea, and any other claimant would be required to file an action against him. Under R.C. 737.29, Houpt is obviously the person from whom the property was taken, and no one else has claimed it.
Furthermore, even if R.C. 2933.41(A) applies to lost property that is illegally obtained by the government, the illegality of the search would still entitle Houpt to possession under R.C. 2933.41(B). If the search was lawful, preceden appl R.C. 2933.41(B) would divest Houpt of any right to the propertytyingby employing the fiction that because he was never actually in possession of the property, he is not entitled to its possession. State v. Davidson (Jan. 11, 1985), Wood App. No. WD-84-58, unreported; see, also, Eastlake v. Lorenzo, supra.[3] As noted, such a result is consistent with the common law because the lawful seizure would entitle the State to possession of the property against all but the true owner. However, prior possession would be unnecessary where the seizure was unlawful, because Houpt would be entitled to possession as against a trespasser. Therefore Houpt would be entitled to the money even if R.C.2933.41 applied instead of R.C. 737.29.[4]
The dissent contends that this case does not concern the city's power to dispose of property under R.C. 2933.41, stating that the dispositional question remains to be determined, and also dismisses the State's illegal search and seizure as irrelevant to Houpt's claim, citing Eastlake v. Lorenzo (1992), 82 Ohio App.3d 740, 613 N.E.2d 247, in support. These contentions are untenable at best, and disingenuous at worst.
We first note that the judge's summary judgment order was dispositional — it conclusively determined that Houpt had no entitlement to the money under any circumstances. If the dissent truly meant what it purports to say, it would at least concur in the denial of summary judgment to Berea on the grounds that Houpt's claim to the money cannot properly be accepted or denied. The grant of summary judgment conclusively determined that the money should be distributed to someone other than Houpt. In all practicality, that ruling awarded the money to the city of Berea.
We next observe that Eastlake v. Lorenzo has no bearing on whether the lawfulness of the seizure affects Houpt's claim. The search and seizure in that case was never challenged as unlawful, and thus the issue was never addressed. State v. Lorenzo (Jan. 6, 1989), Lake App. No. 13-108, unreported, vacated in part, reversed and remanded, (June 9, 1989), unreported, appeal after remand sub nom. Eastlake v. Lorenzo, supra. Eastlake simply does not address the effect of an unlawful seizure on a claimant's rights to property because in that case the search and seizure were concededly lawful.
By contending that the lawfulness of the seizure is irrelevant to Houpt's claim, the dissent has concluded that he would not be entitled to the money regardless of whether R.C. 737.29, R.C. 2933.41, or the common law applies. The only possible justificationfor the dissent's conclusion is that Houpt never was in possession of the property, and thus could never be entitled to possession, through extension of Davidson and Eastlake. The dissent fails, however, to acknowledge the extension of the law proposed. No case has found what the dissent proposes — that the government may unlawfully seize property and then rely on the party's disclaimer of ownership, itself the product of the unlawful seizure, to deny its return to the person from whom taken. In order to reach its conclusion, the dissent must somehow apply R.C. 2933.41 while ignoring the phrase otherwise lawfully seized appearing in that statute, or apply the in possession fiction to reach an even more tenuous fiction that Houpt was not the person from whom the money was taken pursuant to R.C.737.29, despite the fact that the fiction has been employed only in cases applying R.C. 2933.41 to lawful seizures. Moreover, the dissent's conclusion necessarily would interpret the statutes inconsistently with the common law, but again fails to acknowledge this fact or justify doing so. In his desire to prevent Houpt from recovering the money the dissenting judge has failed to recognize the legal and practical consequences of his conclusions. We will not upend the law based on vague suspicions that Houpt does not deserve the money or came by it illegally.
If the property is not lawfully seized and is not contraband, the city has no right to retain possession of the property, and must return it to one entitled to possession. Houpt has claimed the property, and his right to possession is clear whether R.C. 2933.41, R.C. 737.29, or the common law applies. If the true owner of the money wishes to claim it, he may make his claim against Houpt.
Judgment reversed and judgment entered for Houpt.
It is ordered that the appellant recover from appellee his costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J., CONCURRING SEPARATELY; KENNETH ROCCO, J., DISSENTS (SEE SEPARATE OPINION).
[1] Moreover, Loveman concerned a lawful search pursuant to a warrant and the money found was determined to be contraband.
[2] As noted infra, however, I agree with the concurring opinion to the extent it suggests that the government should never be able to act as a finder in these circumstances. The government's presence, even if lawful, is nonetheless artificial, and should not be accorded the same status as that of other licensees or invitees when it finds property pursuant to a search.
[3] We note, however, that in Eastlake the appellant not only denied ownership, she assigned her possessory interest to another person, and that the case was remanded for further dispositional proceedings because the city had failed to attempt to locate the true owner.
[4] In fact, I agree with the concurring opinion to the extent it indicates that the government should be prohibited from employing the prior possession fiction altogether, and any non-contraband property found while searching a premises should be returned to the owner of the premises if no other true owner is found, regardless of whether R.C. 737.29
or 2933.41 applies.