[Cite as *State v. West*, 2012-Ohio-6138.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 97398 and 97899**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TODD WEST

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED IN PART; REVERSED IN PART**
**AND REMANDED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-548609

**BEFORE:** Jones, J., Boyle, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** December 27, 2012

**ATTORNEY FOR APPELLANT**

Michael P. Maloney
24441 Detroit Road
Suite 300
Westlake, Ohio 44145

**For Appellant**

Todd West
Inmate #604-897, RICI
1001 Olivesburg Road
P.O. Box 8107
Mansfield, Ohio 44901


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Patrick J. Lavelle
         Louis J. Brodnik
         Jeffrey S. Schnatter
Assistant County Prosecutors
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant Todd West challenges his conviction for trafficking in drugs that was rendered after a jury trial. He also challenges the trial court's handling of his motion to suppress evidence, his sentence, and the order of forfeiture against him. We affirm in part and reverse in part.

I. Procedural History

{¶2} In March 2011, Todd, and his brother codefendant Timothy West, were jointly charged with illegal manufacture of drugs or cultivation of marijuana, drug trafficking, drug possession, and possessing criminal tools. The counts contained several forfeiture specifications, including forfeiture of automobiles and real property.

{¶3} In September 2011, Todd filed a motion to suppress on three grounds. First, he sought an order suppressing "any and all evidence obtained from search warrants obtained to permit thermal imaging 'fly-overs'" of his house, Timothy's house, and a commercial building that he and Timothy jointly owned. Second, Todd sought an order suppressing the evidence obtained from the actual searches of those premises. And third, Todd sought an order suppressing "any and all oral (or written) statements" he made. The trial court denied the motion as it related to the evidence obtained during the flyovers and searches, and the statements.

{¶4} The matter proceeded to a jury trial. At the conclusion of the state's case, the defense moved for a Crim.R. 29 judgment of acquittal, but the trial court denied its

motion.   The defense presented a case, and at the conclusion of its presentation, renewed its Crim.R. 29 motion; the trial court again denied its motion.   After its deliberations, the jury found Todd guilty of all counts and specifications.   The trial court sentenced Todd to a 16-year prison term, which included 8-year consecutive sentences on the illegal manufacture or cultivation and the drug trafficking charges.

{¶5} Nicholas Kulon claimed an interest to the real property that was subject to forfeiture.   After a hearing, the trial court issued a forfeiture order against Todd and in favor of the state.   The order included the forfeiture of two automobiles and two parcels of land "sufficiently described as 2341 Scranton Road, Cleveland, Ohio."   The trial court found that Kulon was a "bona fide purchaser for value" of the Scranton Road property, and ordered it transferred from Todd and Timothy to Kulon.   The proceeds were ordered to the state.

## II.   Facts

{¶6} In September 2010, the Cleveland police began investigating Timothy and Todd.   During the investigation, the police learned that the brothers owned the property located at 2341 Scranton Road, and that they had purchased the property for $110,000 cash in May 2010.   The police also learned that each man owned a home in Westlake.

{¶7} The trial testimony revealed that there is a short driveway for the Scranton Road property that leads to a locked gate and chain link fence.   A large commercial building is located inside the gated and fenced portion of the property.   On November 3, 2010, Cleveland police conducted surveillance of the property.   During the surveillance,

the police observed a van, driven by Timothy, arrive at the property, followed shortly by the arrival of an Oldsmobile, driven by Todd. Upon their arrivals, each defendant drove his vehicle into the driveway, got out of his vehicle, unlocked the padlock, and opened the gate. The defendants then got back into their vehicles, drove beyond the gate, then got out of their car again and closed and locked the gate. Todd and Timothy then drove their vehicles to the garage bay doors, opened the garage doors, pulled their cars into the garage, and then closed the door.

{¶8} After Timothy and Todd left the property that day, the police walked the perimeter of the building and smelled a strong odor of marijuana. The police obtained a warrant to search the building; they also obtained warrants to search Timothy and Todd's homes.

{¶9} On the day of the searches, November 5, 2010, the officer who had surveilled the Scranton Road property two days earlier again conducted surveillance of the property. The officer saw the same two vehicles from the November 3 surveillance arrive at the property separately, but very close in time, and again driven by Todd and Timothy. Todd arrived first driving the Oldsmobile. He went through the same motions as on November 3: stopped the car in the driveway, got out and unlocked the gate, got back into the car and drove past the gates, got out, closed and locked the gate, drove the car to the garage, opened the garage, drove in, and shut the garage door. Timothy arrived shortly after Todd, and went through the same motions from November 3 and that Todd had just gone through moments before.

{¶10} During the officer's surveillance of the property, no other vehicles or persons arrived. Eventually, Todd left the building and after seeing Todd drive the Oldsmobile out of the garage, the officer contacted other officers to move in. Todd was detained when he got out of his car to unlock the gate. The police informed Todd that they were there to execute a search warrant and informed him of his *Miranda* rights, which Todd indicated he understood.

{¶11} An officer stayed outside the building with Todd while other law enforcement officials executed the search inside the building. The officer asked Todd if there was any marijuana inside the building; Todd responded "lots." Todd elaborated that there were "a lot, hundreds, maybe a thousand" marijuana plants in the building. When the police asked him how many plants were ready for harvest, Todd responded, "lots, you got us good." When further asked where he kept his money, Todd replied "we haven't had a chance to sell anything yet, there is no money."

{¶12} Meanwhile, the officers executing the search found the main door to the building was padlocked, as was the basement door. The officers who searched the basement had to wear face masks because the odor of marijuana was so overwhelming. Timothy was found coming from an office area in the warehouse.

{¶13} The police recovered hundreds of marijuana plants growing primarily in the basement and in one or two of the first floor rooms. The plants weighed a total of approximately 55,000 grams. The police also recovered numerous criminal tools, including "grow lights," ventilation systems, soil, chemicals, packaging material, plant

stakes, plastic gallon-sized and sandwich-sized bags, and scales.

{¶14} A gallon-sized plastic bag containing marijuana was recovered from the trunk of Todd's vehicle. When asked by the police if the bag of marijuana was a pound, Todd said it was 170 grams. A forensic scientist from the Cuyahoga County Regional Forensic Science Laboratory testified that the weight of the bag and contents was 173.5 grams.

{¶15} The police recovered $280 from Timothy's person and an electric timer was found during a search of his van. Papers and money were seized from Timothy and Todd's homes: $1,313 from Timothy's house, and $2,700 from Todd's house.

{¶16} After Todd and Timothy had been together for about an hour, Todd denied talking to the police and making any statements. Todd admitted that he owned the building and stated that he leased part of it to a man named Adam Flanik.

### III. Law and Analysis

### Motion to Suppress

{¶17} For his first assigned error, Todd claims that the trial court erred by failing to hold an evidentiary hearing, make findings or rule on the portion of his motion seeking to suppress the evidence obtained during the thermal imaging flyovers and the actual searches. We disagree.

{¶18} Prior to trial, the court addressed the "motion to suppress *both* the evidence [obtained during the flyovers and the searches] and the statements * * *." (Emphasis added.) The court asked Todd's counsel how he wished to proceed. Counsel replied:

With respect to the search warrants, I'm certain that the Court will review the contents of all the affidavits in support of the search warrants and make a determination on that.

Your Honor, with respect to any oral statements, I have conferred with my client and he represents to me that the police officer did not advise him of his constitutional rights, so I believe that it may be appropriate at some point in time for the officer to testify on that issue.

{¶19} Thus, trial counsel waived a hearing on the portion of the suppression motion relative to the affidavits in support of the search warrant for the thermal imaging flyovers and the actual searches, and appellate counsel has not claimed ineffective assistance of counsel.[1]

{¶20} We next consider Todd's claim that the trial court failed to make findings or rule on his motion to suppress evidence relative to the affidavits in support of the search warrant for the thermal imaging flyovers.   The trial court *did* rule on that portion of his motion to suppress evidence:   "Before we swear [the jury] in, I'm going to rule on the motions to suppress.   The motion to suppress the evidence [obtained during the flyovers and the actual searches] is denied and the motion to suppress the statements is denied." The trial court did not, however, make any findings in issuing its ruling.

{¶21} Crim.R. 12(F) provides that "[w]here factual findings are involved in determining a motion, the court shall state its essential findings on the record." Todd never requested findings of fact, however.   This court has held that an appellant waives

---

[1] The trial court did have a hearing on the portion of the suppression motion relative to Todd's oral statements.   Todd has not challenged on appeal the court's ruling on this portion of his motion, and therefore we do not address it.

his right to challenge a violation of Crim.R. 12(F) if he does not make a timely request for findings. *State v. Martin*, 8th Dist. No. 89030, 2007-Ohio-6062, *appeal not allowed by*, 117 Ohio St.3d 1441, 2008-Ohio-1279, 883 N.E.2d 458.

**{¶22}** This court has clarified that "it does not appear to be a blanket rule that an appellant must request factual findings in order to invoke Crim.R. 12(F)" "if * * * there is insufficient evidence in the record demonstrating that the trial court's decision is justified, then a trial court may violate Crim.R. 12(F) even if the appellant fails to make a timely request." *Bedford v. McLeod*, 8th Dist. No. 94649, 2011-Ohio-3380, ¶ 16, citing *Bedford v. Clark*, 8th Dist. No. 95594, 2011-Ohio-941 ("in cases where we found that a violation of Crim.R. 12(F) did not require reversal, there was other evidence in the record from which we could review and determine whether the trial court erred in ruling on the motion to suppress.").

**{¶23}** A judge may issue a search warrant only upon a finding that "probable cause for the search exists." Crim.R. 41(C). As to appellate review of the affidavit, the Ohio Supreme Court has stated the following:

> In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. (*Illinois v. Gates* [1983], 462 U.S. 213, followed.)

*State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus.

**{¶24}** Thus, when reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant, an appellate court should accord great deference to the magistrate's judgment. *See also State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992).

**{¶25}** There was no hearing on the motion to suppress the evidence obtained from the thermal imaging flyovers and searches because defense counsel waived it, and the affidavits in support of the search warrant is not part of the record on appeal. As the appellant, Todd had the duty of providing this court with the complete record necessary to support his assignments of error. *See Volodkevich v. Volodkevich*, 48 Ohio App.3d 313, 314, 549 N.E.2d 1237 (9th Dist.1989), *leave to appeal denied*, 47 Ohio St.3d 705, 547 N.E.2d 987 (1989). In the absence of a complete record, this court must presume regularity in the trial court's proceedings and accept its judgment. *Wozniak v. Wozniak*, 90 Ohio App.3d 400, 409, 629 N.E.2d 500 (9th Dist. 1993), *appeal dismissed*, 68 Ohio St.3d 1440, 1441, 626 N.E.2d 124 (1994). Because the affidavits in support of the search warrants are necessary to the resolution of Todd's assignment of error, this court must presume the regularity of the trial court's proceedings and affirm the judgment of the court below.

**{¶26}** The first assignment of error is overruled.

<u>Sufficiency of the Evidence</u>

**{¶27}** In his second assignment of error, Todd contends that the evidence was insufficient to sustain a conviction for trafficking.[2]

**{¶28}** Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of evidence review require the same analysis. *State v. Mitchell*, 8th Dist. No. 95095, 2011-Ohio-1241, ¶ 18, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386. The role of an appellate court presented with a sufficiency of the evidence argument is delineated as follows:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶29}** R.C. 2925.03(A)(2), governing drug trafficking, provides that

> [n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person.
> **{¶30}** Thus, to convict Todd for drug trafficking the state needed to prove that he

knowingly did one of the following:  (1) prepared the marijuana for shipment; (2)

---

[2]In his second assignment of error as stated in the table of contents, Todd claims that the evidence was insufficient as to both the drug trafficking and the cultivation or manufacture charges. In the text of his brief, however, Todd only challenges the drug trafficking charge and, therefore, we limit our discussion accordingly.

shipped, transported, or delivered the marijuana; (3) prepared the marijuana for distribution; or (4) distributed the marijuana. *State v. Hatcher*, 8th Dist. No. 70857, 1997 Ohio App. LEXIS 3403 (July 31, 1997).

{¶31} Todd contends that there was "no evidence at trial that [he] did any of the above." We disagree. There was more than sufficient evidence that the marijuana was being prepared for shipment and/or distribution. Boxes of packaging materials were recovered from the Scranton Road property, as well as other items indicative of trafficking, such as scales. Further, a package of marijuana was recovered from the trunk of Todd's car. Moreover, when questioned by the police, Todd admitted that there was "lots" of marijuana in the building and stated that he and Timothy had not "had a chance to sell anything *yet*." (Emphasis added.)

{¶32} On this record, the evidence was sufficient to sustain the drug trafficking conviction and Todd's second assignment of error is overruled.

Maximum, Consecutive Sentences

{¶33} In his third assignment of error, Todd contends that the trial court erred in imposing maximum, consecutive sentences on the drug trafficking and manufacture or cultivation counts.

{¶34} The Supreme Court of Ohio has established a two-step procedure for reviewing a felony sentence. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence

is clearly and convincingly contrary to law." *Id.* at ¶ 4. If this first step is satisfied, the second step requires the trial court's decision be "reviewed under an abuse-of-discretion standard." *Id.*

**{¶35}** At the time Todd was sentenced on September 12, 2011, trial courts were not required to perform specific fact-finding prior to imposing maximum, consecutive sentences. *See State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768. That is, trial courts still had the "discretion and inherent authority to determine whether a prison sentence within the statutory range [should] run consecutively or concurrently * * *." *State v. Bates*, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, ¶ 19.

**{¶36}** Although at the time of sentencing here the trial court was not required to state express factors for a consecutive sentence, the court's discretion nonetheless was required to be guided by consideration of the statutory framework that applies to all felony offenses, including those set forth in R.C. 2929.11 and 2929.12. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 37; *State v. Bonness*, 8th Dist. No. 96551, 2012-Ohio-474, ¶ 8-9.

**{¶37}** We find that the trial court satisfied the first prong of the *Kalish* test for two reasons. First, the court "considered all required factors of law" and found that "prison is consistent with the purpose of R.C. 2929.11." Second, both the drug trafficking and manufacture or cultivation offenses of which Todd was convicted carried mandatory eight year prison terms. Thus, to the extent that Todd claims error about the imposition of maximum terms on either of those counts, his contention is without merit.

**{¶38}** We now consider Todd's insinuation that the drug trafficking and manufacture/cultivation counts should have merged as allied offenses. The issue was not raised at the trial court level. The Ohio Supreme Court has held that failure to raise the issue of merger in the trial court waives all but plain error review. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 52. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." A reviewing court will take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), syllabus. To qualify as "plain," the error must be "obvious" from the record on appeal. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16.

**{¶39}** The merger statute, R.C. 2941.25, provides as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶40} In its most recent pronouncement on allied offenses, the Ohio Supreme Court stated that the statute "itself instructs us to look at the defendant's conduct when evaluating whether his offenses are allied." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 42. First, courts must determine "whether it is possible to commit one offense *and* commit the other with the same conduct * * *." (Emphasis sic and citation omitted.) *Id.* at ¶ 48. Second, "[i]f multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id.* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Johnson* at ¶ 50.

{¶41} Count 1 of the indictment charged that Todd "did knowingly cultivate marijuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance, and the drug involved in the violation was marijuana * * *." Count 2 of the indictment charged that Todd "did knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person * * *."

{¶42} Under R.C. 2925.01(F), "'[c]ultivate' includes planting, watering, fertilizing, or tilling." Under R.C. 2925.01(J),

'[m]anufacture' means to plant, cultivate, harvest, process, make, prepare, or otherwise engage in any part of the production of a drug, by propagation, extraction, chemical synthesis, or compounding, or any combination of the same, and includes packaging, repackaging, labeling, and other activities incident to production.

{¶43} In light of the above, it is possible to commit drug trafficking and the illegal cultivation or manufacture of marijuana with the same conduct, the first prong of the *Johnson* test. We further find that, based on the evidence here, the offenses were "'committed with a single state of mind.'" *Johnson* at ¶ 49, quoting *Brown* at ¶ 50.

{¶44} The evidence at trial established that Todd cultivated and/or manufactured marijuana for the purpose of trafficking it. Some of the marijuana recovered by the police was already packaged, items incident to trafficking were recovered where the marijuana was being cultivated or manufactured, and when asked where he kept his money, Todd replied "we haven't had a chance to sell anything yet, there is no money."

{¶45} On this record, the trafficking and cultivation and manufacturing counts should have merged as allied offenses. Because we find that the two counts should have merged, the issue of the sentence on the two counts being ordered to be served consecutively is moot. The third assignment of error is therefore sustained.

Forfeiture Order

{¶46} In his fourth and fifth assignments of error, Todd challenges the trial court's forfeiture order as it relates to the Scranton Road property. He contends that the court erred by ordering forfeiture of both parcels and that the value of the forfeited property was disproportionate to the severity of the offense.

**{¶47}** R.C. 2981.04 governs criminal forfeiture proceedings and states that property may be forfeited

> only if the complaint, indictment, or information charging the offense * * * contains a specification * * * that sets forth all of the following to the extent it is reasonably known at the time of the filing:  (a) The nature and extent of the alleged offender's * * * interest in the property; (b) A description of the property; (c) If the property is alleged to be an instrumentality, the alleged use or intended use of the property in the commission or facilitation of the offense.

**{¶48}** The forfeiture specifications attendant to Counts 1 and 2, and relative to the Scranton Road property, stated that Todd and Timothy were the owners of the property, identified as permanent parcel # 004-10-006.  The specifications further stated that the property was an instrumentality that Todd and Timothy used in the commission or facilitation of a felony offense.

**{¶49}** At the forfeiture hearing, testimony was elicited from an employee of the Cuyahoga County fiscal office that the address 2341 Scranton Road is actually two parcels of land.  Todd now contends that the trial court erred in ordering forfeiture of both parcels because the indictment only identified one parcel.  We disagree.

**{¶50}** The May 2010, conveyed both parcels of land, and referred to the singular address of 2341 Scranton Road.  Further, the two parcels were merged for tax purposes.  Throughout the proceedings, the property was referenced by address; there was never any confusion or doubt about what property was involved.  On this record, the trial court properly forfeited the entirety of the property and the fourth assignment of error is overruled.

**{¶51}** We are also not persuaded by Todd's contention that forfeiture of the property was disproportionate to the severity of the offense. In support of his contention, Todd cites R.C. 3719.01(O), which provides as follows:

> "Marijuana" means all parts of a plant of the genus cannabis, whether growing or not; the seeds of a plant of that type; the resin extracted from a part of a plant of that type; and every compound, manufacture, salt, derivative, mixture, or preparation of a plant of that type or of its seeds or resin. "Marijuana" does not include the mature stalks of the plant, fiber produced from the stalks, oils or cake made from the seeds of the plant, or any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, except the resin extracted from the mature stalks, fiber, oil or cake, or the sterilized seed of the plant that is incapable of germination.

**{¶52}** According to Todd, the calculation of the weight of the marijuana was not in accordance with the above statutory definition because the weight included the entire marijuana plant. The Ohio Supreme Court addressed this issue in *State v. Wolpe*, 11 Ohio St.3d 50, 463 N.E.2d 384 (1984), stating as follows:

> The statutory definition excludes, generally, the mature stalks, sterilized seeds, and the by-products thereof. The obvious intent of the General Assembly in enacting the exclusion to the definition of "marihuana" in R.C. 3719.01[O][3] was to recognize that the mature stalks, sterilized seeds, and by-products thereof have either legitimate, lawful uses or no unlawful use and thus should not be deemed contraband. By structuring R.C. 3719.01[O] as it did, we conclude that the General Assembly additionally intended that, in order for certain parts of the marijuana plant to be excluded from the statutory definition, those parts must already have been separated from the non-excluded portions of the plant. This is true because all parts of the marihuana plant, according to the first sentence of R.C. 3719.01[O], are considered to be marihuana. This necessarily includes mature stalks and sterilized seeds. It follows that the exclusion

---

[3] *Wolpe* references R.C. 3719.01(Q), the defining section at the time, which is substantively the same as the definition under R.C. 3719.01(O).

described in the second sentence of R.C. 3719.01[O] applies only where the substance is found to consist solely of mature stalks, sterilized seeds, or otherwise excluded material.

*Wolpe* at 52.

**{¶53}** The *Wolpe* court held, therefore, that the "state has no burden to separate any statutorily excluded portions of the plant from the quantity of marijuana seized" from a defendant. *Id.*

**{¶54}** In *State v. Rotaru*, 8th Dist. No. 56499, 1990 Ohio App. LEXIS 160 (Jan. 25, 1990), this court, relying on *Wolpe*, held that in determining the weight of marijuana, the state "has the burden to separate excluded portions of the plant from the quantity of seized marijuana only where that quantity is 'found to consist solely of mature stalks, sterilized seeds, or otherwise excluded material.'" *Id.* at *9-10, quoting *Wolpe* at *id.*

**{¶55}** The trial testimony here demonstrated that the leaves and stalks were all attached; under *Wolpe*, therefore, weighing the entire plant, including the mature stalks, was appropriate. Furthermore, we are also not persuaded by Todd's contention that the marijuana had to be dry prior to it being weighed. Generally, Ohio courts have held that drugs "'can be weighed as received * * *.'" *State v. Leonard*, 4th Dist. No. 08CA24, 2009-Ohio-6191, ¶ 31, quoting *State v. Jones*, 7th Dist. No. 06 MA 17, 2007-Ohio-7200, ¶ 25, *State v. Burrell*, 8th Dist. No. 86702, 2006-Ohio-2593, ¶ 3; also citing *State v. Kuntz*, 4th Dist. No. 01CA2604, 2001-Ohio-2591, and *State v. Hunter*, 5th Dist. No. 99CA0036, 1999 Ohio App. LEXIS 3870 (Aug. 19, 1999).

**{¶56}** For example, in *Kuntz*, the defendant's marijuana weighed over 200 grams

at the time of the offense. On the day of trial, however, the marijuana weighed less than 200 grams. On that discrepancy, the defendant claimed that his conviction for possession of marijuana weighing over two hundred grams but less than one thousand grams was against the manifest weight of the evidence.

{¶57} The Fourth Appellate District upheld the conviction, however, finding that police testimony that over time marijuana loses weight because of dehydration provided an "alternate explanation to the theory that the scale [was] inaccurate or unreliable." *Kuntz* at *6. In its later pronouncement in *Leonard*, the Fourth District later stated that "[i]mplicit in that finding is our belief that law enforcement officials need not let marijuana 'dry out' before weighing it." *Id.* at ¶ 32. *See also Jones*, *supra*, at ¶ 29, applying the rationale to crack cocaine ("Although the crack cocaine in count four may not have been as dry as it will be in the future * * * the lab need not allow the crack to dry at all.").

{¶58} In light of the above, the weight of the marijuana was properly determined in this case.

{¶59} The fourth and fifth assignments of error are overruled.

IV. Conclusion

{¶60} Judgment affirmed in part and reversed in part. The trial court's judgment is affirmed as to (1) its ruling on the motion to suppress, (2) the drug trafficking conviction, and (3) its forfeiture order. The trial court's judgment is reversed as to its sentence on both the trafficking in drugs and cultivation and manufacture convictions,

and the case is remanded for merger of the counts and the state's election of which count to proceed to sentencing on.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J.,    and
KATHLEEN ANN KEOUGH, J., CONCUR