[Cite as *State v. West*, 2013-Ohio-96.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 97391 and 97900

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TIMOTHY WEST

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART,
REVERSED IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-548609

**BEFORE:** Keough, J., Boyle P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** January 17, 2013

**ATTORNEYS FOR APPELLANT**

David L. Doughten
The Brownhoist Building
4403 St. Clair Avenue
Cleveland, OH 44103

Timothy West, pro se
Inmate #604-876, RICI
1001 Olivesburg Road
P.O. Box 8107
Mansfield, OH 44901

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:   Jeffrey S. Schnatter
       Louis J. Brodnik
       Patrick Lavelle
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} In this consolidated appeal, defendant-appellant, Timothy West, appeals his convictions and the trial court's decision ordering forfeiture of certain property. Finding some merit to the appeal, we affirm in part, reverse in part, and remand.

{¶2} In March 2011, Timothy and his brother, codefendant, Todd West, were jointly charged with illegal manufacture of drugs or cultivation of marijuana, drug trafficking, drug possession, and possession of criminal tools. Each count contained several forfeiture specifications, including forfeiture of automobiles, money, and real property.

{¶3} Although initially requesting a separate trial from his brother, Timothy withdrew that motion prior to the start of trial and a joint jury trial commenced. The facts adduced at trial were stated in this court's opinion in *State v. West*, 8th Dist. Nos. 97398 and 97899, 2012-Ohio-6138, ¶ 6-16:

> In September 2010, the Cleveland police began investigating Timothy and Todd. During the investigation, the police learned that the brothers owned the property located at 2341 Scranton Road, and that they had purchased the property for $110,000 cash in May 2010. The police also learned that each man owned a home in Westlake.
>
> The trial testimony revealed that there is a short driveway for the Scranton Road property that leads to a locked gate and chain link fence. A large commercial building is located inside the gated and fenced portion of the property. On November 3, 2010, Cleveland police conducted surveillance of the property. During the surveillance, the police observed a van, driven by Timothy, arrive at the property, followed shortly by the arrival of an

Oldsmobile, driven by Todd. Upon their arrivals, each defendant drove his vehicle into the driveway, got out of his vehicle, unlocked the padlock, and opened the gate. The defendants then got back into their vehicles, drove beyond the gate, then got out of their car again and closed and locked the gate. Todd and Timothy then drove their vehicles to the garage bay doors, opened the garage doors, pulled their cars into the garage, and then closed the door.

After Timothy and Todd left the property that day, the police walked the perimeter of the building and smelled a strong odor of marijuana. The police obtained a warrant to search the building; they also obtained warrants to search Timothy and Todd's homes.

On the day of the searches, November 5, 2010, the officer who had surveilled the Scranton Road property two days earlier again conducted surveillance of the property. The officer saw the same two vehicles from the November 3 surveillance arrive at the property separately, but very close in time, and again driven by Todd and Timothy. Todd arrived first driving the Oldsmobile. He went through the same motions as on November 3: stopped the car in the driveway, got out and unlocked the gate, got back into the car and drove past the gates, got out, closed and locked the gate, drove the car to the garage, opened the garage, drove in, and shut the garage door. Timothy arrived shortly after Todd, and went through the same motions from November 3 and that Todd had just gone through moments before.

During the officer's surveillance of the property, no other vehicles or persons arrived. Eventually, Todd left the building and after seeing Todd drive the Oldsmobile out of the garage, the officer contacted other officers to move in. Todd was detained when he got out of his car to unlock the gate. The police informed Todd that they were there to execute a search warrant and informed him of his Miranda rights, which Todd indicated he understood.

An officer stayed outside the building with Todd while other law enforcement officials executed the search inside the building. The officer asked Todd if there was any marijuana inside the building; Todd responded "lots." Todd elaborated that there were "a lot, hundreds, maybe a thousand" marijuana plants in the building. When the police asked him how many plants were ready for harvest, Todd responded, "lots, you got us good." When further asked where he kept his money, Todd replied "we haven't had a chance to sell anything yet, there is no money."

Meanwhile, the officers executing the search found the main door to the building was padlocked, as was the basement door. The officers who searched the basement had to wear face masks because the odor of marijuana was so overwhelming. Timothy was found coming from an office area in the warehouse [that was connected to rooms containing marijuana plants and growing paraphernalia].

The police recovered hundreds of marijuana plants growing primarily in the basement and in one or two of the first floor rooms. The plants weighed a total of approximately 55,000 grams. The police also recovered numerous criminal tools, including "grow lights," ventilation systems, soil, chemicals, packaging material, plant stakes, plastic gallon-sized and sandwich-sized bags, and scales.

A gallon-sized plastic bag containing marijuana was recovered from the trunk of Todd's vehicle. When asked by the police if the bag of marijuana was a pound, Todd said it was 170 grams. A forensic scientist from the Cuyahoga County Regional Forensic Science Laboratory testified that the weight of the bag and contents was 173.5 grams.

The police recovered $280 from Timothy's person and an electric timer was found during a search of his van. Papers and money were seized from Timothy and Todd's homes: $1,313 from Timothy's house, and $2,700 from Todd's house.

After Todd and Timothy had been together for about an hour, Todd denied talking to the police and making any statements. Todd admitted that he owned the building and stated that he leased part of it to a man named Adam Flanik.

{¶4} Additionally, the trial testimony revealed that Timothy did HV/AC work. Timothy testified that he began renting the south side of the building, where the marijuana-grow operation was discovered, to a couple named Eddie and Maria Torres in July 2010. He stated that although he smelled marijuana on occasion, he thought someone was smoking it inside the building. He further testified that Maria Torres was a florist and was going to plant some trees for him, so he picked up soil for her. He denied

any knowledge of the marijuana and maintained that he and Todd were there to pick up the November rent.

**{¶5}** The jury found Timothy guilty of all counts and specifications. The trial court proceeded directly to sentencing and sentenced Timothy to a 16-year prison term, which included 8-year consecutive sentences on the illegal manufacture or cultivation of drugs and the drug trafficking charges. The trial court also ordered forfeiture of Timothy's automobile, money found in his home and on his person at the time of arrest, and the Scranton Road property.

**{¶6}** Timothy appeals, raising seven assignments of error, which will be addressed together where appropriate.

## I. Confrontation Clause

**{¶7}** At trial, witnesses testified about statements made by codefendant Todd during his interrogation and arrest. Officer Klamert testified that after he conducted a patdown search and *Mirandized* Todd, he questioned him if any marijuana was inside the building. Todd replied that there was "lots." Detective Scott Moran also testified that he asked Todd how many plants were inside the building, and Todd responded, "A lot. Hundreds. Maybe a Thousand." When Detective Moran asked how many were ready for harvest, Todd responded, "Lots. You got us good." Finally, Detective Joseph Bovenzi testified that when he asked Todd about where he kept his money, Todd responded, "We haven't had a chance to sell anything yet. There is no money." Todd did not testify at trial.

{¶8} In his first assignment of error, Timothy contends that the introduction of Todd's extrajudicial statements deprived him of his right to confrontation and of his due process right to a fair trial.

{¶9} "The Sixth Amendment to the United States Constitution guarantees an accused the right to confront witnesses against him." *State v. Swaby*, 9th Dist. No. 24528, 2009-Ohio-3690, at ¶6, citing *Crawford v. Washington*, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In *Crawford*, the United States Supreme Court held that the testimonial statement of a witness who is absent from trial is to be admitted only when the declarant is unavailable, and only when the defendant has had a prior opportunity to cross-examine the declarant. *Id*. at 39.

{¶10} Moreover, "an accused's right of cross-examination secured by the confrontation clause of the Sixth Amendment is violated in a joint trial with a non-testifying codefendant by the admission of extrajudicial statements made by the codefendant inculpating the accused (*Bruton v. United States*, 391 U.S. 123, [88 S.Ct. 1620, 20 L.Ed.2d 476], followed.)" *State v. Moritz*, 63 Ohio St.2d 150, 507 N.E.2d 1268 (1980), paragraph one of the syllabus.

{¶11} However, a violation of an accused's right to confrontation and cross-examination is not prejudicial where there is sufficient independent evidence of an accused's guilt to render improperly admitted statements harmless beyond doubt. *Moritz* at paragraph two of the syllabus.

{¶12} In this case, the State concedes on appeal that the statements made by Todd were testimonial and were subject to *Crawford* if used against Timothy. However, the State maintains that Timothy was not prejudiced by the statements; thus, any error in the admission of the statements was harmless. We agree.

{¶13} While the extrajudicial statements made by Todd may have implicated Timothy, the evidence was sufficient beyond these statements to render them harmless. The evidence presented at trial showed that on two different occasions, Timothy was observed making purchases from two different stores described as "grow houses." On the day the search warrant was executed, Timothy was observed entering the store Cheap Hydroponics and loading large bags of soil into his van — similar looking bags were recovered when the search warrant was executed at the Scranton Road property.

{¶14} When Timothy was arrested at the Scranton Road property, he was apprehended as he was exiting an office area of the warehouse that was connected to other rooms where marijuana plants were growing and harvesting and growing paraphernalia was located. Also located and recovered from those rooms included packaging material, scales, bags, cutting shears, and loose marijuana, stems, and leaves littered the floor. Moreover, the officers testified that when they searched the basement area of the warehouse, they had to wear masks because the odor of marijuana was so overwhelming. Considering the strong odor of marijuana, the debris, plants, and paraphernalia recovered, and that Timothy was apprehended when he was exiting an area

where all the contraband was located, sufficient admissible evidence was present to render the extrajudicial statements made by Todd harmless beyond a reasonable doubt.

{¶15} Accordingly, Timothy's first assignment of error is overruled.

## II. Separate Trials

{¶16} In his second assignment of error, Timothy contends the trial court erred by failing to sever the defendants for trial. The record reflects that Timothy initially moved the court for separate trials; however and after conferring with counsel and Todd's counsel, a tactical decision was made to try the cases together. Accordingly, we find that when he withdrew his motion for separate trials, Timothy invited the error now complained of on appeal. Under the invited error doctrine, "a party is not entitled to take advantage of an error that he himself invited or induced." *State v. Doss*, 8th Dist. No. 84433, 2005-Ohio-775, ¶ 5, quoting *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517. A defendant "'may not make an affirmative and apparent strategic decision at trial and then complain on appeal that the result of that decision constitutes reversible error.'" *Doss* at ¶ 7, quoting *United States v. Jernigan*, 341 F.3d 1273, 1290 (7th Cir.2003).

{¶17} Timothy's the second assignment of error is therefore overruled.

## III. Sentence

{¶18} In his third and fourth assignments of error, Timothy challenges his sentence arguing that the trial court erred by failing to find his convictions of cultivation and trafficking in drugs are allied offenses pursuant to R.C. 2941.25, and that he was

sentenced to consecutive sentences without ordering and considering a presentence report.

**{¶19}** Count 1 of the indictment charged that Timothy "did knowingly cultivate marijuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance, and the drug involved in the violation was marijuana * * *." Count 2 of the indictment charged that Todd "did knowingly prepare for shipment, ship, transport, deliver, *prepare for distribution*, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person * * *."

**{¶20}** Under R.C. 2925.01(F), "'[c]ultivate' includes planting, watering, fertilizing, or tilling." Under R.C. 2925.01(J), "'[m]anufacture' means to plant, cultivate, harvest, process, make, prepare, or otherwise engage in any part of the production of a drug, by propagation, extraction, chemical synthesis, or compounding, or any combination of the same, and includes *packaging, repackaging*, labeling, and other activities incident to production."

**{¶21}** Timothy, therefore, contends that the drug trafficking and manufacture or cultivation counts should have merged as allied offenses. This precise issue was addressed in Todd's appeal. *See West*, 8th Dist. Nos. 97398 and 97899, 2012-Ohio-6138, at ¶ 38-45. After analyzing the merger statutes and the Ohio Supreme Court's most recent pronouncement on allied offenses in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, this court held in *West* that based on the record,

[I]t is possible to commit drug trafficking and the illegal cultivation or manufacture of marijuana with the same conduct, the first prong of the *Johnson* test. We further find that, based on the evidence here, the offenses were "'committed with a single state of mind.'" *Johnson* at ¶ 49, quoting [*State v.*] *Brown*[, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149], at ¶ 50.

The evidence at trial established that Timothy cultivated and/or manufactured marijuana for the purpose of trafficking it. Some of the marijuana recovered by the police was already packaged, items incident to trafficking were recovered where the marijuana was being cultivated or manufactured, and when asked where he kept his money, he replied "we haven't had a chance to sell anything yet, there is no money."

On this record, the trafficking and cultivation and manufacturing counts should have merged as allied offenses.

*Id*. at ¶ 43-45

{¶22} Consistent with *West*, because we find that the two counts should have merged, the issue of consecutive sentences is moot. Accordingly, Timothy's third assignment of error is therefore sustained and his fourth assignment of error is rendered moot.

IV. Ineffective Assistance of Counsel

{¶23} In his fifth assignment of error, Timothy contends he was denied his right to effective assistance of counsel because (1) counsel failed to request separate trials or erred in withdrawing the request for separate trials, (2) failed to object to statements made by codefendant Todd, (3) erred in objecting to the prosecutor's request for an instruction regarding Todd's statements, (4) failed to argue that drug trafficking and cultivation of marijuana were allied offenses, and (5) failed to request a presentence investigation or continuance of sentencing so that Timothy could be afforded the protections of H.B. 86.

We note that these arguments are the basis for other assigned errors raised by Timothy within the appeal and previously addressed in this opinion.

{¶24} To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶25} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus; *Strickland* at 686. In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, had a fair trial and substantial justice was done." *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus.

{¶26} Having previously determined in his first assignment of error that Timothy's right to confrontation may have been violated but any violation was harmless, we necessarily find that he was not denied his right to effective assistance of counsel for failing to object to Todd's statements and for objecting to the trial court's limiting instruction regarding Todd's statements.

**{¶27}** Timothy also argues that his counsel was ineffective for failing to request separate trials and for withdrawing the motion for separate trials. In his second assignment of error, we declined to address the issue of separate trials due to the invited error doctrine. As this court recognized,

> considering an ineffective assistance of counsel claim brought about as a result of invited error would necessarily vitiate our ruling on invited error. There is no point in having a stringent invited error doctrine only to allow it to be overcome by finding counsel ineffective for having invited the error. In any event, an invited error involves the exercise of trial strategy, and the courts have repeatedly held that an appellate court will not question matters of trial strategy."

*State v. Doss*, 8th Dist. No. 84433, 2005-Ohio-775, ¶ 9, citing *State v. Mason*, 82 Ohio St.3d 144, 157, 1998-Ohio-370, 694 N.E.2d 932. Furthermore, this court must presume that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. Courts must generally refrain from second-guessing trial counsel's strategy, even where that strategy is questionable, and appellate counsel claims that a different strategy would have been more effective. *State v. Jalowiec*, 91 Ohio St.3d 220, 237, 2001-Ohio-26, 744 N.E.2d 163.

**{¶28}** His final arguments challenging the effectiveness of his trial counsel pertain to the issue of allied offenses and his sentence. Having previously sustained Timothy's assignments of error specifically challenging the issue of allied offenses, we find his arguments challenging the effectiveness of his trial counsel regarding the issue of allied offenses moot.

**{¶29}** Accordingly, Timothy's fifth assignment of error is overruled.

## V. Forfeiture

**{¶30}** In his sixth and seventh assignments of error, Timothy challenges the trial court's order of forfeiture. Specifically, he contends that the trial court erred when it ordered the forfeiture of (1) cash and his automobile because the evidence failed to establish that they were associated with drug trafficking activities, and (2) both parcels comprising the address of 2341 Scranton Road in Cleveland, Ohio because the indictment only identified one parcel, which was the only parcel of the property used to facilitate the marijuana-grow operation, and the forfeiture of the entire property was disproportionate to the crime.

**{¶31}** Generally, forfeiture is not favored in Ohio. *State v. Clark*, 173 Ohio App.3d 719, 2007-Ohio-6235, 880 N.E.2d 150. ¶ 8 (3d Dist.). "Whenever possible, [forfeiture] statutes must be construed so as to avoid a forfeiture of property." *State v. Lilliock*, 70 Ohio St.2d 23, 26, 434 N.E.2d 723 (1982).

**{¶32}** R.C. 2981.02 specifies three kinds of property that may be forfeited to the State: (1) contraband involved in an offense, (2) proceeds derived from or acquired through the commission of an offense, or (3) an instrumentality that is used in or intended to be used in the commission or facilitation of a felony.

**{¶33}** "Contraband" is defined as property that is illegal for a person to acquire or possess under a statute, ordinance, or rule, or that a trier of fact determines to be illegal to possess by reason of the property's involvement in an offense. R.C. 2901.01(A)(13).

"Proceeds" in matters involving unlawful goods means any property derived directly or indirectly from an offense. R.C. 2981.01(B)(11)(a). An "instrumentality" is property that is otherwise lawful to possess but is used or intended to be used in an offense. R.C. 2981.02(A)(3). In determining whether property was used or intended to be used in the commission of an offense, the trier of fact should consider (1) whether the offense could not have been committed or attempted but for the presence of the instrumentality; (2) whether the primary purpose in using the instrumentality was to commit or attempt to commit the offense; and (3) the extent to which the instrumentality furthered the commission of the offense. R.C. 2981.02(B)(1), (2), and (3).

{¶34} The State must prove by a preponderance of the evidence that the property is subject to forfeiture. R.C. 2981.04(B); R.C. 2981.02. On review, an appellate court may not reverse the trial court's decision where there is "some competent, credible evidence going to all the essential elements of the case." *State v. Hall*, 8th Dist. No. 92952, 2010-Ohio-1665, ¶ 22, quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶35} Timothy first contends that the trial court erred in ordering the forfeiture of his automobile, $1,313 in cash seized during the search of his West Hedgewood residence, and $280 in cash on his person at the time of his arrest because the State failed to prove by a preponderance of the evidence that the cash constituted proceeds from drug trafficking.

{¶36} We first note that Timothy fails to make any specific argument on appeal challenging the trial court's order of forfeiture of his automobile; thus, we find no error in the forfeiture of his automobile. *See* App.R. 12 and 16.

{¶37} Regarding the forfeiture of cash, the State argues that the money found in Timothy's West Hedgewood residence was likely involved in a criminal offense because testimony was elicited at trial that "it is common in the drug trade to separate your drugs from their proceeds." However, this statement and the testimony at trial does not satisfy the State's burden of proving that the cash found in his home were proceeds or an instrumentality from the commission of drug trafficking.

{¶38} First, Ohio courts have recognized that there is nothing inherently illegal about possessing cash. *State v. Golston*, 66 Ohio App.3d 423, 431-432, 584 N.E.2d 1336 (1990), citing *Chagrin Falls v. Loveman*, 34 Ohio App.3d 212, 217, 517 N.E.2d 1005 (1986). To prove cash is subject to forfeiture, the State must demonstrate that it is more probable than not, from all the circumstances, that the defendant used the items in the commission of a criminal offense. *Id.*

{¶39} In this case, the cash was discovered in two separate areas during the search of Timothy's West Hedgewood residence. The testimony at trial revealed that although cash was discovered, no firearms, drug paraphernalia, drugs, or other contraband was found at his residence. Officer Brian Heffernan, who executed the search warrant of the residence, admitted that nothing was discovered at the residence that would lead them to believe that Timothy was involved in drug activity, but he seized the cash because it was

"proceeds of drug trafficking activities." However, Officer Heffernan admitted at trial that $1,300 is not a significant amount of money in the drug trafficking scene. In rationalizing the small amount of money seized, the officer explained that the marijuana discovered at the Scranton Road commercial building had not yet been harvested and sold.

{¶40} "General testimony that cash was found in the home of one convicted of a drug offense without evidence of the presence of drugs or drug paraphernalia, is insufficient to prove any or all of the seized items were used in drug trafficking." *Golston* at 434. Moreover, the small amount of cash discovered also fails to indicate that it was derived from drug trafficking. Accordingly, we find that the trial court's forfeiture order of the $1,313 seized from Timothy's West Hedgewood residence was not supported by competent, credible evidence.

{¶41} However, we do find that the forfeiture of the $280 cash found on Timothy's person at the time of arrest was properly forfeited. Competent and credible evidence was presented that immediately prior to Timothy arriving at the Scranton Road property he made a purchase at Cheap Hydroponics. The testimony by the officers and detectives who conducted surveillance and who executed the search warrant of the Scranton Road property revealed that Timothy was seen loading large bags of what appeared to be soil in his van. The testimony also revealed that similar bags of soil were recovered from the grow and preparation areas located at the Scranton Road property.

Accordingly, the State satisfied its burden that the cash found in Timothy's pocket was an instrumentality used in the commission of the offense.

**{¶42}** Regarding the forfeiture of the Scranton Road property, this court addressed identical arguments raised by codefendant Todd in his appeal. *See West*, 8th Dist. Nos. 97398 and 97899, 2012-Ohio-6138. In rejecting the argument that the trial court erred in forfeiting both parcels of property located at 2341 Scranton Road, this court stated:

> The May 2010 [deed], conveyed both parcels of land, and referred to the singular address of 2341 Scranton Road. Further, the two parcels were merged for tax purposes. Throughout the proceedings, the property was referenced by address; there was never any confusion or doubt about what property was involved. On this record, the trial court properly forfeited the entirety of the property * * * .

*Id*. at ¶ 50.

**{¶43}** Additionally, in *West* this court also rejected the argument that the value of the marijuana was improper because the weight of the marijuana was not properly determined; thus, forfeiture of the entire Scranton property was disproportionate to the severity of the offense. *Id*. at ¶ 51.

**{¶44}** In finding that the weight was properly determined, this court, relying on *State v. Wolpe*, 11 Ohio St.3d 50, 463 N.E.2d 384 (1984), held that the trial testimony "demonstrated that the leaves and stalks were all attached, * * * therefore, weighing the entire plant, including the mature stalks, was appropriate." *Id*. at ¶ 55. This court also reiterated the longstanding principle that "drugs 'can be weighed as received * * *.'" *Id*., quoting *State v. Leonard*, 4th Dist. No. 08CA24, 2009-Ohio-6191, ¶ 31. Therefore,

forfeiture of the entire Scranton Road property was not disproportionate to the severity of the offense.

**{¶45}** Accordingly, we sustain Timothy's assignment of error as it pertains solely to the forfeiture of cash seized at his West Hedgewood residence, but overrule the other arguments raised therein.

## VI.   Conclusion

**{¶46}** Judgment affirmed in part and reversed in part.   The trial court's judgment is reversed as to its forfeiture order of the $1,313 seized from Timothy's West Hedgewood residence.   The trial court's judgment is also reversed as to its sentence on both the trafficking in drugs and cultivation or manufacture convictions, and the case is remanded for merger of those counts and the State's election of which count to proceed with on resentencing.

It is ordered that parties share equally in the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

MARY J. BOYLE, P.J., and
LARRY A. JONES, SR., J., CONCUR