[Cite as *State v. Flachbart*, 2013-Ohio-3807.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99248**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RANDY FLACHBART

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-545705 and CR-550431

**BEFORE:** Stewart, A.J., Keough, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** September 5, 2013

**ATTORNEY FOR APPELLANT**

R. Brian Moriarty
R. Brian Moriarty, L.L.C.
2000 Standard Building
1370 Ontario Street
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Kristen M. Karkutt
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 9th Floor
Cleveland, OH 44113

MELODY J. STEWART, A.J.:

{¶1} The state brought two drug cases against defendant-appellant Randy A. Flachbart: in CR-545705, Flachbart was charged with ten counts of trafficking and possession of Oxycodone and marijuana, along with a single count of possession of criminal tools; in CR-550431, he was charged with nine counts of trafficking and possession of marijuana, Oxycodone, and methamphetamine, along with a single count of possession of criminal tools. The cases were joined for trial, and Flachbart waived a jury. After the state finished its case-in-chief, Flachbart absconded and was tried in absentia. The court found him guilty of all ten counts in CR-545705 and guilty of six counts in CR-550431. Flachbart remained at-large for nearly ten months before his capture and subsequent sentencing. In this appeal, his two assignments of error complain that (1) the state offered insufficient evidence to show that he possessed 87 pills of Oxycodone as charged in CR-550431; (2) the state offered insufficient evidence of the weight of the marijuana as charged in CR-550431; and (3) the counts relating to possession of Oxycodone as charged in CR-545705 were against the manifest weight of the evidence.

I

{¶2} Flachbart first argues that there was insufficient evidence presented in CR-550431 to prove that he possessed a pill bottle containing 87 unit doses of Oxycodone. The police recovered the pill bottle from the pocket of a man's jacket

placed in a laundry basket in the home where Flachbart resided, but he argues that the state offered no evidence to prove that the jacket belonged to him.

A

{¶3} The state charged Flachbart with drug possession under R.C. 2925.11(A). That section states: "No person shall knowingly obtain, possess, or use a controlled substance." Possession can be actual or constructive. *State v. Haynes*, 25 Ohio St.2d 264, 267 N.E.2d 787 (1971). Actual possession entails ownership or physical control, whereas constructive possession is defined as "knowingly exercising dominion and control over an object, even though [the] object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus. The state may show constructive possession of drugs by circumstantial evidence alone. *State v. Trembly*, 137 Ohio App.3d 134, 141, 738 N.E.2d 93 (8th Dist.2000).

{¶4} We determine whether the evidence is sufficient to sustain a verdict by examining the evidence in the light most favorable to the prosecution and determining whether any rational trier of fact could have found that the prosecution proved the essential elements of the crime beyond a reasonable doubt. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 78, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶5} Viewing the evidence most favorably to the state shows that information gleaned from an informant caused the police to obtain a search warrant for a house on Moltke Court in Cleveland. After being read his rights, Flachbart said that he wished to

cooperate. A police officer testified that Flachbart "assumed full responsibility for everything that was in the house," saying "it's all mine. They [the other persons in the house] don't have nothing to do with it." The "it" Flachbart referred to was a large quantity of drugs, drug paraphernalia, packaging, and cash. The police also discovered a sheet of paper that appeared to document drug transactions — it contained figures and amounts, consistent with the street price of marijuana, showing "owed," "pd," and "got." As relevant to this assignment of error, the police discovered a bottle of pills in the left pocket of a jacket they found in the living room.

{¶6} Flachbart argues that the state offered no evidence to show that he possessed the jacket in which the pills were found. We reject this argument for two reasons. First, Flachbart's statement to the police that "it's all mine" was sufficient to cause a rational trier of fact to conclude that he possessed all of the drugs found in the house, including the drugs contained in the pocket of the jacket. Second, even without that statement, the jacket being found in a place where Flachbart resided was strong circumstantial evidence from which a rational trier of fact could find that he owned the jacket and its contents. While constructive possession requires more than that the property is located within the premises under one's control, *Hankerson*, 70 Ohio St.2d at 91, the presence of pills in the pocket of one's garment is strongly suggestive of possession even if one is not wearing that garment. There was no evidence to show that there were other males residing at or present in the house at the time of the search, so the court could rationally deem Flachbart

to be in constructive possession of the drugs found in the pocket of a jacket within his house.

B

{¶7} Flachbart next argues that the state failed to prove the precise weight of the marijuana recovered from the house. Counts 1 and 2 of CR-550431 charged Flachbart with trafficking and possession of marijuana in an amount in excess of 5,000 grams. He argues that the state's expert erroneously included the seeds and stems to arrive at a weight of 5,172 grams.

{¶8} R.C. 3719.01(O) defines "marihuana" as:

[A]ll parts of a plant of the genus cannabis, whether growing or not; the seeds of a plant of that type; the resin extracted from a part of a plant of that type; and every compound, manufacture, salt, derivative, mixture, or preparation of a plant of that type or of its seeds or resin. "Marihuana" does not include the mature stalks of the plant, fiber produced from the stalks, oils or cake made from the seeds of the plant, or any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, except the resin extracted from the mature stalks, fiber, oil or cake, or the sterilized seed of the plant that is incapable of germination.

{¶9} In *State v. Wolpe*, 11 Ohio St.3d 50, 463 N.E.2d 384 (1984), the Ohio Supreme Court noted that the first line of the statutory definition of marijuana included "all" parts of the plant. In addition, it stated:

By structuring R.C. 3719.01(Q) [now R.C. 3719.01(O)] as it did, we conclude that the General Assembly additionally intended that, in order for certain parts of the marijuana plant to be excluded from the statutory definition, those parts must already have been separated from the non-excluded portions of the plant. This is true because all parts of the marijuana plant, according to the first sentence of R.C. 3719.01(Q), are considered to be marijuana. This necessarily includes mature stalks and sterilized seeds. It follows that the exclusion described in the second

sentence of R.C. 3719.01(Q) applies only where the substance is found to consist *solely* of mature stalks, sterilized seeds or otherwise excluded material. (Emphasis sic.)

{¶10} The holding in *Wolpe* merely acknowledges the long-standing proposition that "drugs can be weighed as received." *See State v. West*, 8th Dist. Cuyahoga Nos. 97398 and 97899, 2012-Ohio-6138, ¶ 55.

{¶11} The testimony showed that the marijuana consisted of two bricks that contained seeds and stems that had not been broken down or removed from them. The bricks were thus properly weighed consistent with *Wolpe*. *West* at ¶ 44.

## II

{¶12} Flachbart next argues that the court's judgment of conviction was against the manifest weight of the evidence. He argues that the court could not credibly find that he resided at the Moltke Court address and that it disregarded testimony from his father, who testified that he had a prescription for Oxycodone that he left on the premises. Finally, Flachbart maintains that the house had been under construction at the time the police searched it and it was possible that construction workers left the pills.

{¶13} The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340, 515 N.E.2d 1009 (9th Dist.1986). The use of the word "manifest" means that

the trier of fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶14} The court did not lose its way by finding that Flachbart resided at the Moltke Court address such that he could be imputed with ownership of the drugs discovered there. Apart from his concession to the police that all the drugs uncovered in the house belonged to him (he denied possession of drugs found in a pickup truck belonging to another person who previously lived at the house), evidence of personal papers associating Flachbart with the Moltke Court address strongly suggested that he resided there. Flachbart now claims that he resided in another city, but the court could reject that assertion not only in light of Flachbart's personal papers showing the Moltke Court address, but in light of testimony by his daughter in which she claimed the Moltke Court address as "home" and admitted that she kept her high school diploma there.

{¶15} The court likewise did not lose its way by rejecting defense testimony that Flachbart's father owned the pills. Flachbart's daughter testified that he loaned his car to his father when he served an earlier prison term. The father returned the car and just days later, as a passenger in the back seat of that car, she found a bottle of pills. She gave the pills to Flachbart. He put them in his coat pocket. When they arrived at their

destination, she said the police were waiting for them and discovered the pills in Flachbart's coat. Flachbart's father testified and identified the pills as belonging to him. He said that he needed Oxycodone for pain relief after being in an automobile accident several years earlier and that he often left pills in various locations, including Flachbart's car.

{¶16} The difficulty with Flachbart's argument is that his father's testimony was patently unbelievable. The father told the court that he was in such constant pain that he required four to six Oxycodone pills a day, yet incredibly he claimed to have left as many as 200 pills in Flachbart's house. This was incredible because Flachbart's father did not actually reside at the house — the father lived in Florida and visited the Moltke Court address infrequently. The daughter likewise lacked any credibility because she insisted that she was completely unaware that her father was trafficking drugs out of the house. She did so despite photographs taken at the time of the arrest showing piles of marijuana in open view throughout the house.

{¶17} In any event, the issue of who owned the pills is not dispositive of whether Flachbart sold those pills. The evidence of scales, packaging, and a ledger sheet of drug transactions convincingly showed that Flachbart was running a drug operation out of the Moltke Court address. What is more, the court heard evidence in CR-550431 that the police arrested Flachbart in a buy-bust operation for selling Oxycodone pills. Given the extent of Flachbart's drug dealing, the court could validly conclude that Flachbart sold the Oxycodone regardless of whether those pills actually belonged to his father.

**{¶18}** In addition, the court could validly find that Flachbart's decision to abscond after the close of the state's case-in-chief showed a consciousness of guilt. The timing of his decision to abscond may not have been coincidental: he may have planned to "take his chances at trial and hope that the prosecution was unable to make its case; if it appeared that conviction was likely, he would flee." *Rozier v. Phillips*, S.D.N.Y. No. 03 Civ. 3298, 2009 U.S. Dist. LEXIS 86996, at *24 (Sept. 21, 2009). If this was the case, it would undermine his credibility. *Id.*

**{¶19}** Finally, Flachbart offers no support for his contention that construction workers may have left the pills in his coat pocket. In fact, his evidence showed the opposite — his daughter testified that she found the pills in Flachbart's car and handed them to him right before his arrest. Although the court could validly find the daughter's testimony to be unbelievable, that testimony was still more plausible than the fanciful idea that a construction worker hid 87 Oxycodone pills in Flachbart's jacket.

**{¶20}** Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MELODY J. STEWART, ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., and
TIM McCORMACK, J., CONCUR